THE TUNGUS ET AL. *v.* SKOVGAARD,
ADMINISTRATRIX, ET AL.

No. 43. Argued October 23, 1958.—Decided February 24, 1959.

*J. Ward O'Neill* argued the cause for petitioners. With him on the brief was *David P. H. Watson.*

*Bernard Chazen* argued the cause for respondents. With him on a brief for Skovgaard, respondent, were *Nathan Baker* and *Milton Garber.*

*Vernon S. Jones* entered an appearance for the El Dorado Oil Works, respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

On the evening of December 5, 1952, the motor vessel *Tungus* docked at Bayonne, New Jersey, with a cargo of coconut oil in its deep tanks. El Dorado Oil Works had been engaged by the consignee to handle the discharge of this cargo, and for the next several hours the work of pumping the oil ashore was carried on by El Dorado employees, using a pump and hoses furnished by their employer. Two officers and two crew members of the *Tungus* remained aboard, the latter specifically assigned to assist in the discharge operations. Shortly after midnight the pump became defective, resulting in the spillage of a large quantity of oil over the adjacent deck area. The pump was stopped and the oil cleaned from its immediate vicinity. Efforts to restore the pump to normal operation were unsuccessful, and Carl Skovgaard, an El Dorado maintenance foreman, was therefore summoned from his home to assist in the repair work. After arriving on board he walked through an area from which the oil had not been removed, and in attempting to step from the hatch beams to the top of the partly uncovered port deep tank, he slipped and fell to his death in eight feet of hot coconut oil.

His widow and administratrix, the respondent here, commenced this suit in admiralty against the ship and its owners to recover damages for his death, alleging unsea-

worthiness of the vessel and a negligent failure to provide the decedent with a reasonably safe place to work.[1] The District Court dismissed the libel, holding that a wrongful death action for unseaworthiness would not lie, and that the petitioners owed no duty of exercising ordinary care to provide the decedent a safe place to work. 141 F. Supp. 653. The Court of Appeals set aside this decree and remanded the case for further proceedings, a divided *en banc* court deciding that the New Jersey Wrongful Death Act embraces a claim for unseaworthiness, and also that the District Court had erred with respect to the scope of the petitioners' duty to exercise reasonable care for the decedent's safety. 252 F. 2d 14. The court did not decide "what defenses, if any, might be available," leaving that question for the District Court to determine. Certiorari was granted primarily to consider the relationship of maritime and local law in cases of this kind. 357 U. S. 903.

We begin as did the Court of Appeals with the established principle of maritime law that in the absence of a statute there is no action for wrongful death. *The Harrisburg,* 119 U. S. 199. Although Congress has enacted legislation, notably the Jones Act[2] and the Death on the High Seas Act,[3] providing for wrongful death actions in a limited number of situations,[4] no federal

[1] The libel also asserted a claim, presumably under the New Jersey survival statute, N. J. Stat. Ann. 2A:15-3, for damages sustained by the decedent prior to his death. This claim has been abandoned.

[2] 41 Stat. 1007, 46 U. S. C. § 688.

[3] 41 Stat. 537 *et seq.*, 46 U. S. C. § 761 *et seq.*

[4] See also the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 *et seq.*, 33 U. S. C. § 901 *et seq.* In the present case, the record shows that the respondent was awarded compensation under the New Jersey compensation act upon a finding that her decedent's death occurred in the "twilight zone." See *Davis* v. *Department of Labor,* 317 U. S. 249.

statute is applicable to the present case; Skovgaard was not a seaman,[5] and his death occurred upon the territorial waters of New Jersey.[6] The respondent's rights in this suit depended entirely, therefore, upon the New Jersey wrongful death statute, and the long-settled doctrine that "where death . . . results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given." *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242.

The primary issue in this case, therefore, as the Court of Appeals unanimously saw it, was whether the New Jersey statute giving a right of action where death is caused "by a wrongful act, neglect or default" is broad enough to encompass an action for death caused by the unseaworthiness of a vessel.[7] It was upon this issue—construction of the state statute—that the court divided.

The respondent asks us to uphold the interpretation which the majority in the Court of Appeals has put upon the New Jersey statute. Failing that, a much broader alternative argument is advanced—that a court in a case

---

[5] The Jones Act applies "in case of the death of any seaman. . . ."

[6] The Death on the High Seas Act creates a right of action only for a "wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State . . . ." 46 U. S. C. § 761.

[7] The relevant text of the New Jersey statute is as follows:

"When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime." N. J. Stat. Ann. 2A:31–1.

such as this may disregard completely the conditions which the State has put upon the right it has created, and may apply instead the full *corpus* of the maritime law, free of any qualifications imposed by the State. If death occurs upon navigable waters within a State, the argument runs, the law should seize only upon the blunt fact that there is some kind of state statute providing some kind of a right of action for death caused by some kind of tortious conduct. That, it is said, is enough to fill the "void" in the maritime law, which then becomes applicable in all its facets, without further inquiry as to what it is that the State has actually enacted.

This broad argument must be rejected. The decisions of this Court long ago established that when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached. That is what was decided in *The Harrisburg,* where the Court's language was unmistakable: ". . . [I]f the admiralty adopts the statute as a rule of right to be administered within its own jurisdiction, it must take the right subject to the limitations which have been made a part of its existence. . . . The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right." 119 U. S. 199, at 214. That is the doctrine which has been reiterated by the Court through the years.[8] See *The Hamilton,* 207 U. S. 398; *La Bourgogne,*

---

[8] That this is the law has been generally understood by the other federal courts. *United New York and New Jersey Pilots Assn.* v. *Halecki,* 251 F. 2d 708 (C. A. 2d Cir.), judgment vacated and cause remanded, *post,* p. 613; *Continental Casualty Co.* v. *The Benny Skou,* 200 F. 2d 246 (C. A. 4th Cir.); *Graham* v. *A. Lusi, Ltd.,* 206 F. 2d 223 (C. A. 5th Cir.); *Lee* v. *Pure Oil Co.,* 218 F. 2d 711 (C. A. 6th Cir.); *Klingseisen* v. *Costanzo Transp. Co.,* 101 F. 2d 902 (C. A. 3d Cir.); *The H. S., Inc., No. 72,* 130 F. 2d 341 (C. A. 3d Cir.); *Feige* v. *Hurley,*

210 U. S. 95; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233; *Levinson* v. *Deupree,* 345 U. S. 648; cf. *Just* v. *Chambers,* 312 U. S. 383.

"[A]dmiralty courts, when invoked to protect rights rooted in state law, endeavor to determine the issues in accordance with the substantive law of the State." *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239, 245. The policy expressed by a State Legislature in enacting a wrongful death statute is not merely that death shall give rise to a right of recovery, nor even that tortious conduct resulting in death shall be actionable, but that damages shall be recoverable when conduct of a particular kind results in death. It is incumbent upon a court enforcing that policy to enforce it all; it may not pick or choose.

It is manifest, moreover, that acceptance of the respondent's argument would defeat the intent of Congress to preserve state sovereignty over deaths caused by maritime torts within the State's territorial waters. The legislative history of the Death on the High Seas Act discloses a clear congressional purpose to leave "unimpaired the rights under State statutes as to deaths on waters within the territorial jurisdiction of the States." S. Rep. No. 216, 66th Cong., 1st Sess. 3; H. R. Rep. No. 674, 66th Cong., 2d Sess. 3. The record of the debate in the House of Representatives preceding passage of the bill reflects deep concern that the power of the States to create actions for wrongful death in no way be affected by enactment of the federal law. 59 Cong. Rec. 4482–4486.

89 F. 2d 575 (C. A. 6th Cir.); *Curtis* v. *A. Garcia y Cia.,* 241 F. 2d 30 (C. A. 3d Cir.); *O'Brien* v. *Luckenbach S. S. Co.,* 293 F. 170 (C. A. 2d Cir.); *Quinette* v. *Bisso,* 136 F. 825 (C. A. 5th Cir.); *The A. W. Thompson,* 39 F. 115 (D. C. S. D. N. Y.); but cf. *Riley* v. *Agwilines, Inc.,* 296 N. Y. 402, 73 N. E. 2d 718; *Kuhn* v. *City of New York,* 274 N. Y. 118, 8 N. E. 2d 300; *O'Leary* v. *United States Line Co.,* 215 F. 2d 708 (C. A. 1st Cir.).

There is no merit to the contention that application of state law to determine rights arising from death in state territorial waters is destructive of the uniformity of federal maritime law. Even *Southern Pacific Co.* v. *Jensen,* which fathered the "uniformity" concept, recognized that uniformity is not offended by "the right given to recover in death cases." 244 U. S. 205, at 216. It would be an anomaly to hold that a State may create a right of action for death, but that it may not determine the circumstances under which that right exists. The power of a State to create such a right includes of necessity the power to determine when recovery shall be permitted and when it shall not. Cf. *Caldarola* v. *Eckert,* 332 U. S. 155.

We hold, therefore, that the Court of Appeals was correct in viewing the basic question before it as one of interpretation of the law of New Jersey. It is within that frame of reference that we consider the issues presented.

The negligence claim needs little discussion. Obviously the New Jersey wrongful death statute embraces a claim for death negligently caused. The majority in the Court of Appeals pointed out that the officers and crew of the *Tungus* remained in over-all control of the vessel, and that they were well aware of the existence of the oil spill and of the danger created by it for approximately an hour before Skovgaard arrived on board. Upon these facts it was concluded that the law imposed upon the petitioners a duty of exercising ordinary care to provide Skovgaard with a reasonably safe place to carry on his work of repairing the pump. In reaching this conclusion the court distinguished the New Jersey Supreme Court's decision in *Broecker* v. *Armstrong Cork Co.,* 128 N. J. L. 3, 24 A. 2d 194. We find no reason to question the disposition of this branch of the case.

As to the other issues, a majority of the Court of Appeals concluded that a claim for unseaworthiness is encompassed by the New Jersey Wrongful Death Act as a matter of state law.[9] The three dissenting members of the court reached the opposite conclusion. Apparently because the trial court had made no finding as to the decedent's contributory negligence or assumption of risk, the Court of Appeals refrained from deciding what effect state law would give to such findings, leaving that question to be decided if it arose on retrial.

In a case such as this it is incumbent upon the admiralty to enforce the New Jersey statute just "as it would one originating in any foreign jurisdiction." *Levinson* v. *Deupree,* 345 U. S. 648, 652. Yet the fact is that the New Jersey courts have simply not spoken upon the question of whether in a case such as this maritime law or common law is applicable under the State's Wrongful Death Act. In sum, there is no way of knowing whether New Jersey would impose uniform legal standards throughout its jurisdiction, or would apply in this case rules different from those that would govern if, instead of meeting his death aboard the *Tungus,* Skovgaard had been killed on the adjacent dock. An effort to resolve that question here, no less than the effort of the Court of Appeals, could be nothing but a prediction, a prediction that might tomorrow be proved wrong by the courts of New Jersey, which alone have power to render an authoritative interpretation.

---

[9] The Court of Appeals also determined that the decedent was within the class protected by the warranty of seaworthiness as developed by federal maritime law, which it found the New Jersey statute had incorporated. This subsidiary determination is clearly correct. The decedent's status is practically indistinguishable from that of the plaintiff in *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406, the only difference being that the cargo here was oil instead of grain, and was being unloaded instead of loaded.

In view of these considerations, it might plausibly be argued that the judgment should be vacated, and the case remanded to the District Court to be held until the parties can secure from the courts of New Jersey a decision upon the controlling and seriously doubtful question of state law. Under traditional principles of equitable abstention this Court has often followed such a course for the limited and obviously wise purpose of avoiding unnecessary resolution of constitutional issues. *Railroad Comm'n of Texas* v. *Pullman Co.,* 312 U. S. 496; *Chicago* v. *Fieldcrest Dairies,* 316 U. S. 168; *Spector Motor Service, Inc.,* v. *McLaughlin,* 323 U. S. 101; *American Federation of Labor* v. *Watson,* 327 U. S. 582; *Leiter Minerals* v. *United States,* 352 U. S. 220. Cf. *Thompson* v. *Magnolia Petroleum Co.,* 309 U. S. 478.

Before deciding to dispose of a case like the present one in that way, however, important and competing jurisdictional considerations would have to be thoroughly evaluated. See *Propper* v. *Clark,* 337 U. S. 472, 486–489; *Meredith* v. *Winter Haven,* 320 U. S. 228. This case has not presented the occasion for full exploration of these jurisdictional questions.[10] The Court of Appeals, *en banc,* has given careful consideration to the meaning of the state statute. We cannot say that its conclusion is clearly wrong. Therefore, despite the inherent uncertainties involved, we will not disturb that court's interpretation of the New Jersey law. Such a course is consistent with the practice that has been followed in the past. *Estate of Spiegel* v. *Commissioner,* 335 U. S. 701, 707–708; *Ragan* v. *Merchants Transfer Co.,* 337 U. S. 530, 534; *General Box Co.* v. *United States,* 351 U. S. 159, 165.

*Affirmed.*

---

[10] Indeed, such a disposition has not even been suggested by counsel.

Mr. Justice Frankfurter, concurring in the opinion of the Court.*

Deeming the proper determination of the substantive issues of admiralty law of such controlling importance, I abstain from stating my strong conviction, heretofore expressed, that in situations like the present the construction of state law should not, as a matter of the wise administration of law, be made independently by the lower federal courts, but its authoritative construction should be sought, under readily available state procedure, from the state court, while the case is held in the federal court. See my opinions in *Sutton* v. *Leib,* 342 U. S. 402, 412–414 (concurring opinion), and *Propper* v. *Clark,* 337 U. S. 472, 493–497 (dissenting opinion), in connection with *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, 500; *Thompson* v. *Magnolia Petroleum Co.,* 309 U. S. 478, 484.

Where an issue is solely concerned with diversity jurisdiction, as was the situation in *Meredith* v. *Winter Haven,* 320 U. S. 228, a different consideration may become relevant. "For purposes of diversity jurisdiction a federal court is, 'in effect, only another court of the State.'" *Angel* v. *Bullington,* 330 U. S. 183, 187.

Mr. Justice Brennan, with whom The Chief Justice, Mr. Justice Black, and Mr. Justice Douglas join, concurring in part and dissenting in part.

It should be clear from the Court's statement of facts that the respondent's decedent, Skovgaard, was at the time of the accident aboard the *Tungus* in order to assist in repairing the pump used in discharging its cargo of oil—in unloading the vessel. While he was not a member of the crew, but rather an employee of an independent

---

*[Note: This opinion applies also to No. 56, *United New York and New Jersey Sandy Hook Pilots Assn.* v. *Halecki, post,* p. 613.]

contractor, he was unquestionably one to whom the vessel owed the duty of seaworthiness. *Pope & Talbot, Inc.*, v. *Hawn,* 346 U. S. 406, 412–413. This means that there was, as it is often put, a "warranty," or more precisely stated, an obligation, a duty owed to certain persons, that the vessel and its equipment, appurtenances and crew met a certain standard. For any breach of that duty, any failure to meet that standard, on the part of the vessel, which gave rise to injury to a person to whom that duty was owed, the vessel and its owner were bound to respond in damages. If that duty was in breach here, and Skovgaard's fall, occasioned thereby, had injured him short of death, there would be no doubt that federal law would afford him a remedy for the injury, and that free of any defense imposed by the law of the State in whose territorial waters the accident took place.[1] *Pope & Talbot, Inc.*, v. *Hawn, supra,* at 409–410. But Skovgaard's injuries were almost immediately fatal, and, as is evident from the record, the principal, if not the sole, claim for damages arising out of the alleged breach of the duty of seaworthiness must be for the damages caused by his death. It was decided in *The Harrisburg,* 119 U. S. 199, that the federal maritime law did not afford a remedy for the death of a human being, even where the death arose out of a tortious breach of maritime duty.

In the light of this holding, the Court addresses itself to the problem whether the New Jersey Wrongful Death Act can be utilized to furnish a remedy for the breach of the federally defined duty owed to Skovgaard. In reaching its solution of this problem, I fear that it has posed the wrong question. The Court takes the view that it is

---

[1] Clearly so where the action was pursued in admiralty. In other forums, and in some circumstances, there might arguably be some room for the application of such defensive features of state remedial law as statutes of limitations. See *McAllister* v. *Magnolia Petroleum Co.,* 357 U. S. 221, 224, n. 5.

a question of state law whether the respondent can utilize the New Jersey Act to supply a remedy for the breach of the duty of seaworthiness charged here. It accepts the answer of the Court of Appeals to this question. The problem to the Court is one of construction of the State Act to determine whether it "incorporates" the maritime standard. This is also the view taken by the lower courts of what the basic question in this case is. I think it is wrong, and I shall state my reasons why.

## I.

*First.* I have developed that Skovgaard was entitled to the duty of seaworthiness at the time of the accident, and that there would be no concern at all with state law in this regard if he had been injured short of death. But the holding of *The Harrisburg, supra,* denies the existence of a federally created remedy for wrongful death arising out of maritime torts. Though this holding was far from being at one with the results that had been reached in the lower admiralty courts prior to it, and was based largely on an application of the harsh common-law principle, then rather lately evolved,[2] that in the absence of an appropriate statute there was no civil remedy for wrongful death, the holding has become part and parcel of our maritime jurisprudence. But its harshness was averted by the practice in admiralty of drawing on the state wrongful death statutes to furnish remedies for fatal maritime torts. To an extent this practice antedated *The Harrisburg,* as the cases cited in that opinion illustrate. See, *e. g., The Garland,* 5 F. 924. It was continued thereafter, and even extended to torts committed on the high seas, beyond the territorial waters of any State. *The*

---

[2] The principle was finally settled for the federal courts sitting at law, under the regime of *Swift* v. *Tyson,* 16 Pet. 1, by *Insurance Co.* v. *Brame,* 95 U. S. 754.

*Hamilton,* 207 U. S. 398. And after the passage by the Congress of the Death on the High Seas Act in 1920, 41 Stat. 537, 46 U. S. C. § 761 *et seq.,* which established a federal remedy for cases of wrongful death occurring more than a marine league from shore, state acts continued to be used by the admiralty, pursuant to the terms of the Act, in the case of wrongs occurring in territorial waters.

Though the individual statutes vary in terminology and to an extent in concept, all the States have wrongful death acts—acts which provide remedies to a decedent's estate, or to certain specified beneficiaries, for the harm done on account of the tortious killing of the decedent. While the course of development of the common law has brought it about that this remedy has always been embodied in a statutory enactment, the existence of such a remedy is now a basic premise of the law of torts administered throughout the country. And with the Death on the High Seas Act and the state statutes, the federal admiralty law has available a remedy to fashion for the fatal breach of a maritime duty anywhere within its jurisdiction.

*Second.* Can such a remedy, based on a state statute, be afforded for breach of the duty, imposed by federal law, to maintain a vessel in seaworthy condition? I think it can. The question is viewed by the Court today and by the courts below as one of interpretation of the statute of a particular State; the Court of Appeals divided over what intent should be ascribed to the New Jersey Legislature in enacting that State's Wrongful Death Act. The process of divining the "intent" of the various state legislatures in such circumstances is not a completely fruitful one, as the Court's opinion makes abundantly clear, and, as I have intimated, I do not believe it is part of the real question the Court should be asking here. The Court has simply failed to grasp the important distinction

here between duties and remedies; between the law governing the details of human behavior and the law governing the specific application of judicial sanctions for breach of duty. It is vital to an understanding of this case to recall that the duty claimed to have been broken here was one grounded in federal law. It would be a strained statement of the effect of *The Harrisburg* to say that there was no duty imposed by the maritime law not to kill persons through breach of the duty of seaworthiness. The libel alleged a condition constituting a breach of a federally defined duty and set forth a cause of action under federal law, and this nonetheless because the breach of the federal duty had resulted in death rather than in nonfatal injury. It is the federal maritime law that looks to the state law of remedies here, not the state law that incorporates a federal standard of care. This Court plainly declared in *Pope & Talbot, Inc.,* v. *Hawn, supra,* at 409, that even when the injured party seeks to enforce "a state created remedy" for the breach of the federally defined duty owing to him, "federal maritime law would be controlling." The Court today does not refer to this recent expression, clearly of the greatest relevance here. Given a federal legal system where the remedy for wrongful death is as universal as in ours, I think it unwarrantedly destructive of the uniformity of the federal maritime law, cf. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205,[3] to make the applicability of a remedy for the breach

[3] The Court's citation of *Jensen* as lending some support to its position is not well taken. The language quoted, 244 U. S., at 216, says no more than that the state statutes are allowed to perform a function in this area, which everyone concedes is correct. I fear, too, that in its somewhat deprecatory reference to the *Jensen* case, the Court may be ignoring the basically sound and enduring principle of that decision, the necessity that the federal maritime law exhibit independence of the varying rules of state law. Of course, there is

of a federally defined duty resulting in death dependent on a frankly supposititious determination of the intent of the various state legislatures, generally acting at a time long before a clear concept of the scope of the federal duty had emerged. And of course this determination will almost invariably be made by the federal courts.

The Court's solution not only creates potential differences in the availability of a remedy for breach of the federally created duty where the victim dies as opposed to cases where he is injured short of death; those differences may exist in varying degrees as to maritime torts occurring in the territorial waters of various States. I cannot think that any such variation is appropriate or necessary in the enforcement of the cause of action for unseaworthiness. The federal duty need not be subject to this potential diversity of remedies. Cf. *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255; *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239.[4] The existence of a remedy for wrongful death has become almost a postulate of our legal system, though the remedy was generally provided by legislation rather than by the decisional law. It

more warranted criticism of *Jensen* for the unfortunate practical results it created in its own specific area of application. Cf. Gilmore and Black, The Law of Admiralty, § 1–17.

[4] The Court's quotation from *Garrett,* "[A]dmiralty courts, when invoked to protect rights rooted in state law, endeavor to determine the issues in accordance with the substantive law of the State," made in support of its conclusion, is a patent begging of the question at issue here. The issue is what system of law gives rise to the rights and duties here involved. No one would doubt that the federal law gives rise to the substantive standards by which the conduct of the parties here involved would have been judged if Skovgaard's injuries had not been fatal. The question is whether his rights, and those of his representatives in respect to the conduct that injured and killed him, remain rooted in federal law here, where the suit is for damages for his death. The Court's confusion of rights and duties with remedies is apparent again here.

is against this background that the federal law must look for an appropriate remedy to enforce its duties in a complete and rational way. Cf. *Cox* v. *Roth,* 348 U. S. 207, 210. Any state statute which generally provides remedies for tortious death can and should be drawn upon by the maritime law in enforcing the federal cause of action. Cf. *Just* v. *Chambers,* 312 U. S. 383, 389.

It is true that for state-law purposes these statutes are frequently spoken of as creating a "new cause of action." See *Turon* v. *J. & L. Construction Co.,* 8 N. J. 543, 556, 86 A. 2d 192, 198; *Ake* v. *Birnbaum,* 156 Fla. 735, 751, 25 So. 2d 213, 215–216;[5] cf. *Seward* v. *The Vera Cruz,* 10 A. C. 59, 67. And so they do, in the sense that they give remedies where frequently none existed before, in favor of classes of persons potentially different from the distributees of a decedent's estate, and in the large to an extent designed to furnish redress for the death. And it is further true that not every tort duty imposed by a particular State's law may be afforded a remedy by them. But insofar as these acts have as their purpose the effecting of a general and rough equivalency between the duties for breach of which a remedy lies in the case of injuries causing death and those short of it, they can be proper subjects for the flexibility of the federal maritime law in fashioning a remedy for breach of the duty of seaworthiness. The content of the concept of

---

[5] The *Ake* case, like others, suggests that there may possibly be two "rights" infringed by a tort causing death—one of the injured party and the other of his beneficiaries. But this is not an analytically helpful way of viewing the situation. The measure of the duty of conduct owed the injured party is typically the limit of the substantive liability of the tortfeasor and of the "right" enjoyed by the beneficiaries. It is clear that what is meant by the "right" of the beneficiaries is a special and distinct remedial incident attributable to a single breach of duty.

"cause of action" is a variable and uncertain one, and there is little point in analyzing the various senses in which it has been used in connection with the state statutes. In a real sense the state acts are remedial, and as such they can be used by the admiralty. Used in this way for remedial purposes, they would not interfere with the uniform character of the general maritime law, cf. *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372, 384, but rather would be an effective method of promoting it.

Of course there is no objection to using state remedial incidents to supplement and enforce duties arising under federal law. The federal courts of their own initiative have used state statutes for remedial purposes when federal duties were concerned. State statutes of limitation applicable to analogous types of claims have been utilized to define the limitations of federal rights of action for which no federal statute of limitations has been provided. *Campbell* v. *Haverhill,* 155 U. S. 610; *Cope* v. *Anderson,* 331 U. S. 461; cf. *Holmberg* v. *Armbrecht,* 327 U. S. 392, 395; *Hamilton Foundry & Machine Co.* v. *International Molders Union,* 193 F. 2d 209, 215. This remedial incident, tied up with the felt necessity of having some statutory definition, is drawn upon not because of any intent of the state legislatures *to* make their statute applicable to federal claims, but because it could be rationally utilized through analogy by courts charged with the enforcement of federal rights and duties and the construction of a proper pattern of remedies to that end. It is on such a basis that the federal maritime law here, in my view, can make use of the New Jersey statute to enforce those duties that are grounded in federal law.

I am supported in this conclusion by two carefully reasoned opinions of the New York Court of Appeals. *Kuhn* v. *City of New York,* 274 N. Y. 118, 8 N. E. 2d 300; *Riley* v. *Agwilines, Inc.,* 296 N. Y. 402, 73 N. E. 2d 718. Both

cases considered actions brought in the state courts under the Saving Clause, 28 U. S. C. § 1333 (1), to redress maritime torts which resulted in death. The actions were based upon the maritime theories of negligence and unseaworthiness. The New York Court of Appeals held that the State's Wrongful Death Statute afforded only an appropriate remedy for breaches of duties which were to be recognized as essentially federal in their source and uniform in their application: "[W]e must look to the decisions of the Federal courts to define the liabilities of shipowners for maritime torts, leaving out of consideration decisions of our own courts or statutes of the State which conflict with the rules of liability established in the Federal courts." *Riley* v. *Agwilines, Inc.,* 296 N. Y. 402, 405–406, 73 N. E. 2d 718, 719. The court clearly viewed the issue of the duties alleged to have been in breach to be not a matter of interpretation of the New York Wrongful Death Statute but to be a question upon which the federal maritime law was compelling.[6] Cf. *O'Leary* v. *United States Lines Co.,* 215 F. 2d 708, 711.

*Third.* I find no reason to reach a contrary result in the authorities relied upon by the Court, or urged by the petitioner. It is true that there is language in *The Harrisburg,* 119 U. S. 199, 214, describing the state Wrongful Death Act enforced by the admiralty as creating both a liability and a remedy. But the legal source of the duty sought to be enforced there was not claimed or recognized to be rooted in federal law. The case was decided long before the cause of action for unseaworthiness reached its present mature state, recognized as being federal in its origin and incidents. *Seas Shipping Co.* v. *Sieracki,* 328

---

[6] Judge Learned Hand's opinion in *Guerrini* v. *United States,* 167 F. 2d 352, 354, took the view that the New York cases were decided as compelled by the federal law, as is amply evident from the opinions themselves.

U. S. 85; *Pope & Talbot, Inc.*, v. *Hawn, supra; Alaska S. S. Co.* v. *Petterson*, 347 U. S. 396. And *The Harrisburg*, on this point, together with *Western Fuel Co.* v. *Garcia*, 257 U. S. 233, on which there is also reliance, actually held that in an admiralty action using the state Wrongful Death Act the state statute of limitations applicable to actions under the state law using the state act would be utilized. This was a solution to one aspect of the limitations problem in maritime personal tort actions, see *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221, 224, 228–229. The most readily available limitations period for an action making use of a state Wrongful Death Act was the period stated therein, and the Court relied on it rather than the admiralty rule of laches. In *Levinson* v. *Deupree*, 345 U. S. 648, the Court was not concerned with a situation in which the duty alleged to have been broken was as clearly federal as is that in the instant case, and it was apparently assumed that the right to be enforced was grounded in state law. The action was not a seaman's or harbor worker's action at all, but rather arose out of a collision between two motorboats on the Ohio River, fatal to a girl riding in one of them. And of course the holding of the Court there is of no assistance to the majority, since a state-law procedural incident, alleged to be binding since the admiralty was making use of the state act, was in fact rejected. *Lindgren* v. *United States*, 281 U. S. 38, which held that a seaman's representative could not sue for unseaworthiness under a state Wrongful Death Act, does not govern this point at all. The opinion dealt primarily with the effect of the Jones Act's wrongful death provision in removing the seaman's right to invoke the remedies of state Death Acts for the identical gravamen of negligence. And, although the libel did not allege unseaworthiness, the Court briefly observed that the Jones Act's death provision would be construed

equally as foreclosing a state statute's use on that count. The case provides no rule here, since its holding was premised on the Jones Act, and to Skovgaard's injury and death the Jones Act is not applicable.[7] Finally, there is not presented here any question of the extent to which a State is required to supply a forum for the enforcement of the duties here involved. Cf. *Caldarola* v. *Eckert,* 332 U. S. 155, 158;[8] but cf. *Testa* v. *Katt,* 330 U. S. 386.

The Court's reasoning that the Death on the High Seas Act is somehow dispositive of the question presented today appears to me to continue its confusion between the rights and duties of the parties and the remedial pattern to be followed in enforcing them. No one is contending that the state statutes are to be given no operation in this area; they are an important remedial incident of the right that respondent seeks to assert here. Of course Congress in the Death on the High Seas Act was interested in preserving their availability. There is, however, no suggestion in the Act or its legislative history that

---

[7] *The Hamilton,* 207 U. S. 398, cited by the Court, only holds that a state-created death remedy could be applied to a collision on the high seas. It appears from the opinion that Mr. Justice Holmes considered the general federal maritime law relevant to a determination of liability under it. *Id.,* at 406–407. And in *La Bourgogne,* 210 U. S. 95, where recovery made use of the French death remedy, liability was found as a matter of substantive law where France would not have found it. Finally, *The Corsair,* 145 U. S. 335, held that the Louisiana Death Act did not create a maritime lien. It was not there considered whether the breach of a federally defined duty could have created such a lien, even though the breach resulted in death, and in fact the source of the duty being enforced through the Louisiana Act was not discussed.

[8] The New York Court of Appeals did not consider its own decision in *Caldarola,* 295 N. Y. 463, 168 N. E. 2d 444, aff'd, 332 U. S. 155, as preclusive of its decision less than a year later in *Riley* v. *Agwilines, Inc.,* 296 N. Y. 402, 73 N. E. 2d 718. See pp. 604–605, *supra.*

Congress intended that the substantive law of the States be the only law applicable in death cases in territorial waters, or that in fact it be applicable at all in particular proceedings. The effect of Congress' action was to leave the state statutes available as remedial measures in territorial water death cases. It offers no guide for any conclusion as to what substantive law is to apply under the state acts in situations where federally created rights and duties would have prevailed had the injury not been fatal. The only concrete examples of what the Congress was interested in saving to the States given on the floor of the House were the jurisdiction of the state courts, which was dwelt on at length, 59 Cong. Rec. 4484–4485, and the maintenance of the state scheme of beneficiaries, *ibid.*, which is not challenged here. It is odd to draw restrictive inferences from a statute whose purpose was to extend recovery for wrongful death. The legislative history does not reveal the utmost precision in thought regarding the role of state law here, but certainly there is no clear basis in it from which to infer that the Court's anomalous result is a necessary one.

Clearly, then, neither the decided cases nor legislative materials foreclose the question of the approach to state Wrongful Death Acts that should be taken by the federal admiralty law in fashioning remedies for breach of the federally defined duty with which we are here concerned. And as I have indicated, the vital principles of the admiralty law as defined by this Court in the past point to the result I have indicated. A proper uniformity on essential matters of maritime cognizance, see *Just* v. *Chambers,* 312 U. S. 383, 389, cannot be reached by making the availability of this remedy dependent upon exegesis of the statute of each State. It is enough for me that the State provide such a remedy in a general way; the remedy is now a universal feature of the common-law system in this

country, and in its essential features offers a sufficient basis for the operation of the general maritime law. While there is ground for local variation on nonessential matters, on the essentials the admiralty may look to uniform features in these statutes rather than to the diverse. The Court's anomalous result that different systems of law govern in determining the tortious character of conduct, depending on whether it kills or merely injures its victim, is a conscious choice of a nonuniform solution on an essential matter, and as such contrary to one of the basic principles of admiralty law.

It might be contended that the contours of the various state remedies are so diverse in the varying lists of statutory beneficiaries they provide that the area becomes one in which uniformity cannot in any event be attained, and accordingly it could be said to be inappropriate to seek uniformity even in the content of the duty to be enforced. I cannot find such a contention persuasive. The distribution of funds accruing to a decedent's representatives by reason of his death is a matter, in our federal system, peculiarly within the competence of the States. Certainly it is not a matter more destructive of the uniform character of the maritime law than were the state statutes of limitations enforced in *Western Fuel Co.* v. *Garcia, supra.* And it is no more disturbing to the maritime law whether the state distributional scheme is one provided generally by its law or one peculiar to its Wrongful Death Statute.[9]

---

[9] Despite Judge Learned Hand's initial suggestion in *Puleo* v. *H. E. Moss & Co.,* 159 F. 2d 842, 845, quickly retracted in *Guerrini* v. *United States,* 167 F. 2d 352, 355, the Conservation Act, 45 Stat. 54, 16 U. S. C. § 457, is not relevant to the problem here. That Act makes applicable state death acts (as well as state personal injury law generally) to torts "within a national park or other place subject to the exclusive jurisdiction of the United States." The state terri-

## II.

Petitioner contends that, on the respondent's negligence claim, the Court of Appeals improperly applied federal law to the determination of the question whether a duty to furnish a reasonably safe place to work was owed the decedent by the respondent vessel and its owner. On this aspect of the case, the Court of Appeals, citing both New Jersey and federal cases, indicated that such a duty existed and that it would have been tortious for the respondent negligently to have failed to provide a safe place. It remanded the case to the District Court for findings on the issue of negligence and on any defenses on that issue that might be available to the petitioner. Petitioner contends here that New Jersey law applies to the question whether such a duty was owed, alleging that the New Jersey precedents are contrary to the result reached by the court below. Although it believes that the Court of Appeals properly applied New Jersey law, the Court accepts the contention that state law applies here. In view of what I have said above, I cannot agree. In *Pope & Talbot, Inc.,* v. *Hawn, supra,* at 409, it was made clear that the duty imposed by the theory of negligence to act in accordance with a standard of reasonable care, when coupled with the duty to maintain a seaworthy ship, owed to a person in Skovgaard's status, was a federally created duty. Cf. *The Max Morris,* 137 U. S. 1, 14–15. The factual circumstances involving proof of negligence and of unseaworthiness, where both are claimed, are generally intertwined. *Pope & Talbot, Inc.,* v. *Hawn, supra,* at 416

torial waters, while within the cognizance of the federal maritime law, are also subject to the jurisdiction of the States, *Toomer* v. *Witsell,* 334 U. S. 385, 393, and hence one need go no further than its terms to find the Act inapposite.

(concurring opinion); *McAllister* v. *Magnolia Petroleum Co.,* 357 U. S. 221, 224–225. Cf. *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316. My view is that it is plain that in enforcing the related duty imposed by the obligation not negligently to inflict harm the federal courts must look to state Wrongful Death Acts in the same light as I have indicated it is appropriate to look at them in enforcing the duty to maintain a seaworthy vessel. The basis for the holding that New Jersey law applies is the Court's acceptance of a distinction in primary legal duties in respect to maritime accidents causing fatal as opposed to nonfatal injuries. As I have developed above, I cannot view any such distinction as tenable. Since the Court of Appeals' holding on the negligence issue was correct as a matter of federal law, its judgment should be affirmed on this point, except to the extent that it directed the District Court to determine what defenses were available as a matter of New Jersey law.

## III.

Admiralty law is primarily judge-made law. The federal courts have a most extensive responsibility of fashioning rules of substantive law in maritime cases. See *Wilburn Boat Co.* v. *Fireman's Fund Ins. Co.,* 348 U. S. 310, 314; cf. *The John G. Stevens,* 170 U. S. 113, 126–127. This responsibility places on this Court the duty of assuring that the product of the effort be coherent and rational. Admiralty law is an area where flexibility and creativity have been demonstrated in accomplishing this. Today the Court announces the strange principle that the substantive rules of law governing human conduct in regard to maritime torts vary in their origin depending on whether the conduct gives rise to a fatal or a nonfatal injury. I have demonstrated that it does so under no compulsion of binding precedent here or of

Act of Congress. Its anomalous result is purely of its own making. Certainly the responsibility incumbent upon this Court in this area demands more by way of fulfillment than the Court has furnished today.[10]

For the reasons I have stated, I concur in the judgment affirming the judgment of the Court of Appeals, except to the extent I have just indicated.

---

[10] I might likewise say that even if the source of substantive law here be considered as state law, it hardly would comport with the responsibility of the federal courts for them to send the parties to an admiralty action before them to the state courts to obtain an adjudication of the legal issues involved. Though the Court does not make such a disposition here, certain inclinations in this direction are discernible in its opinion. The words of Chief Justice Stone in *Meredith* v. *Winter Haven*, 320 U. S. 228, might furnish the lesson here; we must recollect that jurisdiction creates the duty of decision, and that, like the diversity, the admiralty jurisdiction "was not conferred for the benefit of the federal courts or to serve their convenience." *Id.*, at 234.