**Ruth HOLLEY, Administratrix of the Estate of Edward J. Holley, deceased, Appellant,**

v.

**THE Steamship MANFRED STANS-FIELD, her engines, boilers, etc., in rem and Reederei Blumenfeld, G.M.B.H., in personam, Appellees.**

No. 7822.

United States Court of Appeals Fourth Circuit.

Argued April 10, 1959.

Decided July 9, 1959.

Howard I. Legum, Norfolk, Va. (Fine, Fine, *Legum,* Weinberg & Schwan, Norfolk, Va., on brief), for appellant.

Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black & Meredith, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and THOMPSON, District Judge.

SOBELOFF, Chief Judge.

While helping to unload the German SS Manfred Stansfield in South Norfolk, Virginia, Edward J. Holley, a longshoreman, was killed. His widow, as administratrix of his estate, filed a libel against the vessel and its owner charging that Holley's death resulted from the unseaworthiness of the ship and the failure to furnish the decedent a safe place to work. The District Court dismissed the libel on the ground that Holley had been guilty of contributory negligence which was held to be an absolute bar to recovery under the Virginia Code provision governing Death by Wrongful Act.[1] This appeal challenges both the court's finding of fact and its conclusion of law.

The ship docked at South Norfolk on September 13, 1956, to discharge potash which it had brought from Hamburg,

---

1. Code of Virginia. "Article 3. Death by Wrongful Act. § 8–633. Action for death by wrongful act.—Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, or of any ship or vessel, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action, or to proceed in rem against such ship or vessel or in personam against the owners thereof or those having control of her, and to recover damages in respect thereof, then, and in every such case, the person who, or corporation or ship or vessel which, would have been liable, if death had not ensued, shall be liable to an action for damages, or, if a ship or vessel, to a libel in rem, and her owners or those responsible for her acts or defaults or negligence to a libel in personam, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances, as amount in law to a felony. * * *"

Germany. At an earlier stop in Baltimore, a substantial portion of the cargo of potash had been removed from the square of number 2 hatch. When the ship arrived in South Norfolk it was noted that the cargo had not been trimmed or leveled in Baltimore. While the square of the hatch was relatively clear, the remaining potash, both fore and aft and in the wings, had been left piled 12 to 20 feet high.

By reason of its hydroscopic nature, the potash had solidified during the voyage, and in places was extremely hard, like concrete. Recognizing the difficulties and dangers involved in discharging this type of cargo, the stevedore's superintendent requested permission to use small charges of dynamite to loosen the potash—a method sometimes resorted to in such circumstances. When this request was refused by the ship's officers, it was decided to employ air hammers, picks and shovels for the loosening operation.

As the potash had earlier been substantially removed from the square of the hatch, "payloaders" were lowered into the ship and Holley was assigned to operate one of them. A "payloader" is a small bulldozer with a scoop on the front which is used to bring loose cargo to the square of the hatch so that it may be loaded into the clam shell or grab of the crane. In addition to collecting loose cargo, "payloader" operators often use their scoops to assist in breaking the mass at the floor level. Holley used his scoop in this manner. While there was evidence that this is a usual method— some said the only possible method— there was other testimony, offered by the ship, to show that the practice followed by Holley is frowned upon by experienced stevedores because cutting away at the base of a bulk cargo creates the danger of an "overhang." There was no evidence that when he was assigned to the hold the deceased was given any specific instructions, and the testimony as to instructions on other occasions is not clear. However, it was plainly established that he was an experienced "payloader" operator.

Holley met his death when an overhanging block of potash, described as about the size of the court-room desk, fell on him and overturned the machine. The accident happened at a point where the potash was from 12 to 15 feet high. He was not at the moment actually digging or hitting the potash with his machine, and no other men were then working in the area, either on the top side of the cargo or at the floor level, picking at the potash or applying air hammers to loosen it.

Without ruling on the question of unseaworthiness or the failure to provide a safe place to work, the District Court held that the decedent's "failure to take reasonable precautions for his own safety undeniably contributed to the accident." For this reason the court dismissed the libel, 165 F.Supp. 660, 664.

█ It plainly appears that there was a cave in the potash at the point where the decedent was working when he was fatally injured. There is no description of the cave as to size, and it was not established clearly when and by whom the cave and the overhang were made. There was evidence that the cave might have been created the day before, either by Holley or by someone else. There was, on the other hand, some evidence that he was digging in the cave shortly before the accident. The testimony is not altogether satisfactory for, as the District Judge commented, it is difficult to assess how much of the witnesses' recitals on the stand was based on actual observation and how much on inferences which they drew from having seen the decedent working in or near the cave before the accident. However, the problem while not free from difficulty, is not unusual and latitude must be allowed the trier of fact who heard and observed the witnesses. We are not prepared to say that it was clearly erroneous to find that the decedent's conduct constituted "a proximate cause of the accident," contributing in some degree, in conjunction with the condition of the cargo, to its collapse

and the accident which followed. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; United States v. Ladd, 4 Cir., 1952, 193 F.2d 929.

We turn to the question of the legal effect of the finding of contributory negligence—whether it constitutes an absolute bar as at common law, or brings into operation the maritime rule of comparative negligence.

Since admiralty provides no remedy for the death of a longshoreman resulting from an act committed on inland navigable waters, the admiralty court must look to the state law to see if it provides relief. The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Death on the High Seas Act, Title 46 U.S.C.A. § 761; Jones Act, 46 U.S.C.A. § 688; The Tungus v. Skovgaard, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524. The District Court ruled in this case that since under the general law of Virginia contributory negligence has been held an absolute bar to recovery, the same rule is applicable here. In this ruling, the court followed decisions of the Third Circuit applying the Pennsylvania Wrongful Death Statute, 12 Pennsylvania Statute Annotated § 1601, in Curtis v. A. Garcia Y. Cia, 3 Cir., 1957, 241 F.2d 30; Hill v. Waterman Steamship Corp., 3 Cir., 1958, 251 F.2d 655 and Klingseisen v. Costanzo Transp. Co., 3 Cir., 1939, 101 F.2d 902. These cases dealt with a statute somewhat different from Virginia's and, even more significantly, they were decided before Skovgaard and did not examine the question in light of the considerations there pointed out.

While it cannot be disputed that the Virginia Courts have declared contributory negligence a bar in suits brought under the state's wrongful death statute, all such cases arose in situations where the Virginia common law would have applied had death not resulted. We have been unable to find any case in which the Supreme Court of Appeals of Virginia, or even a lower court of that state, has held contributory negligence a complete bar to recovery in a wrongful death action where, as here, the maritime doctrine of comparative negligence would have controlled if death had not ensued. Paraphrasing the Supreme Court's language in Skovgaard, there is no way of knowing whether Virginia would impose uniform legal standards throughout its jurisdiction, or would apply in this case rules different from those that would govern, if, instead of meeting his death aboard the ship, Holley had been killed on the adjacent dock. The District Judge did not have the benefit of the Skovgaard decision, which came some months later.

Even though there are no state decisions directly concerned with this point, we are not without guides in approaching the problem. It is noteworthy that the Virginia statute specifically covers, among other things, "wrongful acts or defaults of any ship or vessel" and speaks of the right "to proceed *in rem* against the ship or vessel"—a procedure available only in admiralty. It is too obvious to escape attention that the statute was drafted by one well versed in admiralty law. We find ourselves unable to reconcile the result contended for by the appellees with the language of the statute. Basically, it provides that if death is caused by an act which would have entitled the injured party to maintain an action, then the person who would have been liable for the injury will continue to be liable notwithstanding the death of the person injured. Undeniably, had Holley survived, the admiralty rule would have governed under which contributory negligence merely reduces the damages.

Since the accident proved fatal, however, it is argued that the harsh common law rule must control to bar recovery. The Second Circuit rejected this argument in Halecki v. United New York & New Jersey S. H. P. Ass'n, 2 Cir., 1958, 251 F.2d 708 under the New Jersey Wrongful Death Statute, decided about the same time that the Third Circuit decided Skovgaard.

Speaking for the court in Halecki, Judge Hand said:

"  *  *  *  Although, as we have said, we are not dealing with 'feder-

al maritime law,' we should remember that so far as we can we ought to construe the statute so as to avoid capricious and irrational distinctions. We leave open whether New Jersey is without power to take as much or as little of the rights 'rooted in federal maritime law' as it chooses as the model for the right it confers upon the next of kin; but the courts of that state have never passed upon the question, and to deny the exemption [from contributory negligence] to the next of kin seems to us to the last degree capricious and irrational * * *. We are aware that Curtis v. A. Garcia, 241 F.2d 30, 36 * is to the contrary, but as neither it nor O'Leary v. United States Lines Co., supra [1 Cir., 215 F.2d 708], is authoritative, we are free to choose. Obviously, the answer is not certain; we must do as best we can with what we have, and we hold that the New Jersey statute should be construed as taking over as a part of the model it accepted the exemption of contributory negligence as a bar." (251 F.2d at page 713).

This part of the case was affirmed by the Supreme Court on the same day as Skovgaard, in United New York & New Jersey Sandy Hook Pilots Ass'n, 1959, v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 although the judgment was vacated and the case remanded on other grounds.[2]

■ A like interpretation of the Virginia statute seems to us natural and correct. The State is one with considerable marine business. A declared purpose of the enactment was, we repeat, to preserve rights which the decedent would have had if his injuries had not proved fatal. What the Second and Third Circuits found implicit in the New Jersey Wrongful Death Statute, i. e., the rule of comparative negligence where the injury resulting in death occurs on navigable waters of the state, is even more unmistakably indicated in the language of the Virginia statute.[3]

■ If presented with this problem we think that the Supreme Court of Appeals of Virginia would hold that this statute was intended not only to take away from the wrongdoer the common law immunity resulting from the death of an injured party, but to grant recovery in all instances where a decedent would have recovered. The statute appears not to concern itself with which law, local or maritime, would have supported the recovery, but only whether there would have been a recovery.

■ It follows therefore that the judgment of the District Court must be reversed and the case remanded for the application of the rule of comparative negligence. In measuring the extent to which the decedent's negligence contributed to his death, regard should be had for the admonition of Mr. Justice Holmes in Schlemmer v. Buffalo, Rochester, &c. Ry., 1907, 205 U.S. 1, 12–13, 27 S.Ct. 407, 409, 51 L.Ed. 681.

" * * * unless great care be taken, the servant's rights will be

---

* This is one of the Third Circuit cases relied on by the appellees here, see Supra.

2. Dealing with the same New Jersey statute, the majority of the Third Circuit in Skovgaard v. The M/V Tungus, 3 Cir., 1957, 252 F.2d 14 held that the warranty of seaworthiness, also a principle rooted in the admiralty law, was included within the meaning of "wrongful act, neglect or default." This conclusion was affirmed by the Supreme Court in The Tungus v. Skovgaard, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524.

3. We set forth here the relevant portion of the New Jersey statute, for comparison with the Virginia statute, for which see Footnote 1. New Jersey Statute Annotated 2A:31–1.

"When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime."

sacrificed by simply charging him with assumption of the risk under another name. * * * "

Bearing this in mind, the contributory negligence of the decedent is a defense *pro tanto*; but assumption of risk is not to be charged against him.

On remand it will become necessary for the court to make findings on unseaworthiness and failure to provide a safe place to work. While the District Court based its disposition of the case solely on the decedent's contributory negligence and found it unnecessary to decide other questions, unseaworthiness was discussed. We neither approve nor disapprove at this time any intimations in the District Court's opinion as to the law or the facts pertaining to this phase of the case, and the District Court is at liberty in its discretion to permit further testimony to be offered by either side.

Reversed and remanded for further proceedings not inconsistent with the views expressed in this opinion.

Knoch, Circuit Judge, dissented.