HILARY D. THOMAS, as Executrix of JAMES H. THOMAS, Deceased, Respondent, *v.* UNITED AIR LINES, INC., Appellant.

MARTHA L. ZABOR et al., as Administrators C. T. A. D. B. N. of the Estate of ROBERT C. ZABOR, Deceased, Respondents, *v.* UNITED AIR LINES, INC., Appellant.

First Department, April 30, 1968.

*William J. Junkerman* of counsel (*Carroll E. Dubuc* with him on the brief; *Haight, Gardner, Poor & Havens,* attorneys), for appellant.

*Edward M. O'Brien* of counsel (*Speiser, Shumate, Geoghan & Krause,* attorneys), for respondents.

STEVENS, J.   In these wrongful death actions United Air Lines, Inc. (United) appeals separately from an order in each case entered October 13, 1967 which granted the motion of the respective plaintiffs to dismiss the second affirmative defense set forth in defendant United's answer.   This defense pleads that the law of the State of Illinois is applicable to these actions, and such law restricts or limits the amount of recovery of each plaintiff, if any, to $30,000.   Since common questions of law and fact are involved the appeals are considered together.

These actions arose out of the crash of a United Air Lines aircraft into the navigable waters of Lake Michigan on August 16, 1965.   As a result of the accident plaintiffs' decedents lost their lives.   Subsequently these actions to recover damages for wrongful death were commenced in New York.   There is no dispute that the accident occurred within the territorial limits of the State of Illinois.   Nor is there any dispute that each of the decedents was a nonresident of Illinois — James Thomas being a resident of New Jersey at the time of his death, and Robert C. Zabor a resident of Connecticut at the time he was killed.   In both complaints it is alleged that the round-trip ticket held by each decedent was purchased in New York.

The basic issue is whether Federal law, the law of a particular State, or the law of the forum applies to any recovery sought. Resolution of the question involves identification or characterization of the nature of the tort upon which the actions are premised.

Special Term, in granting the motion of each plaintiff to strike the second affirmative defense, construed the *Tungus* case (*The*

*Tungus* v. *Skovgaard,* 358 U. S. 588) to mean that State law and not maritime law should apply in light of the circumstances here present. Special Term concluded that New York's choice-of-law rule (*Babcock* v. *Jackson,* 12 N Y 2d 473) controlled, even as applied to nonresidents, and the law of the forum should take precedence. In our view this was error.

In the cases before us New York does not have a predominant or even a substantial interest in the protection and regulation of the rights of these plaintiffs, for neither they nor their decedents were residents of New York and plaintiffs do not now reside here. Neither plaintiffs nor their decedents had or have any truly significant contacts or relationship with New York, and to apply the law of New York is only to encourage forum shopping. The wrongs of which plaintiffs complain fall into an area not covered by specific Federal law (see Death on the High Seas Act, 66th Cong., 2d Sess. ch. 111; 41 U. S. Stat. 537-538; U. S. Code, tit. 46, §§ 761-764) and the Jones Act (U. S. Code, tit. 46, § 688). The common law gave no right of action for wrongful death, the right is purely statutory. The purpose of the Illinois statute is to afford a remedy for wrongful death by affording compensation to the survivors. In this case the source of the right should govern the nature of the remedy and limit the recovery. (Cf. *Reich* v. *Purcell,* 63 Cal. Rep. 31; 81 Harv. L. Rev. 1342.) The actions, subject of these appeals, are controlled by principles of maritime law, and do not represent a conflict between laws of competing State jurisdictions.

*Miller* v. *Miller* (22 N Y 2d 12) decided April 18, 1968, by the Court of Appeals, can be distinguished. In *Miller,* plaintiff's decedent, a New York resident, died in Maine as the result of an automobile accident which occurred there. The defendants, the owner and operator of the vehicle involved, resided in Maine at the time of the accident. Some three months later they moved to New York and established a residence here. Subsequently an action was commenced against them seeking damages for wrongful death. Defendants pleaded as a third partial defense the $20,000 recovery limitation in the Maine wrongful death statute at the time of the accident. This defense was stricken on motion and the order striking such defense affirmed on appeal. In doing so the court noted that it had previously rejected the traditional choice-of-law rule which looked to the law of the place of the tort (*Babcock* v. *Jackson,* 12 N Y 2d 473). The court stated (p. 15): " the rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are

those which relate to the purpose of the particular law in conflict.'' It concluded that New York had the predominant interest in the protection and regulation of the rights of plaintiff, a New York resident (see *Matter of Clark,* 21 N Y 2d 478), and that there were (p. 19) '' no substantial countervailing considerations * * * which would warrant the rejection of our own law in favor of that of Maine.''

An action for wrongful death is a statutory creation. Had wrongful death occurred on the high seas beyond a marine league from the shore of any State the Death on the High Seas Act (41 U. S. Stat. 537 *et seq.*; U. S. Code, tit. 46, § 761 *et seq.*) would control. In the *Tungus* case (*The Tungus* v. *Skovgaard, supra*) the fatal accident occurred on a motor vessel docked at Bayonne, New Jersey. Decedent's administratrix commenced a suit in admiralty to recover damages, alleging unseaworthiness and a negligent failure to provide a reasonably safe place to work. Dismissal of the libel by the District Court was reversed by the Court of Appeals which decided that the New Jersey Wrongful Death Act embraced a claim for unseaworthiness. The court concluded also that the District Court erred with respect to the scope of petitioner's duty to exercise reasonable care for Skovgaard's safety. The Supreme Court of the United States granted certiorari '' primarily to consider the relationship of maritime and local law in cases of this kind '' (p. 590). The primary issue, as stated, '' was whether the New Jersey statute giving a right of action where death is caused '' by a wrongful act, neglect or default '' is broad enough to encompass an action for death caused by the unseaworthiness of a vessel.'' It was noted that the New Jersey courts had not spoken upon the question whether in a case such as that presented the maritime law or the common law was applicable under the State's Wrongful Death Act. It was obvious that the statute embraced any claim founded on negligence, and the court found also that decedent was within the class protected by the warranty of seaworthiness as developed by Federal maritime law. The Supreme Court affirmed the Court of Appeals and recognized State sovereignty over deaths caused by maritime torts in the territorial waters of a State. Accordingly the law of New Jersey applied and such law was construed to embrace the claim of unseaworthiness (cf. *Kermarec* v. *Compagnie Generale,* 358 U. S. 625).

In the cases before us the deaths occurred in the navigable waters of the State of Illinois. The Death on the High Seas Act is not applicable. Unless a remedy is afforded by State statute the actions for damages for wrongful death cannot be

maintained. A remedy is afforded in these cases by reason of the Illinois wrongful death statute. But, as noted in *The Tungus* v. *Skovgaard* (*supra*), when the State's right of action for wrongful death is adopted, the right is enforced as an integrated whole with whatever conditions and limitations are attached by the creating State.

The acts complained of here, if proved to be wrongful, clearly constitute a maritime tort (see *Weinstein* v. *Eastern Airlines, Inc.* [1963], 316 F. 2d 758, cert. den. 375 U. S. 940), and place such tort in an area regulated by Federal rather than State law. "The maritime law will accord dependents and survivors right of recovery neither more nor less extensive than they would enjoy under the law of the State within whose territorial waters the fatal maritime tort occurred" (*Scott* v. *Eastern Airlines*, 10 Avi. [CCH] 17, 179 [3d Cir., 1967]; *Weinstein* v. *Eastern Airlines, Inc., supra*; *Harris* v. *United Air Lines*, 275 F. Supp. 431 — U. S. Dist. Ct. [S. D. Iowa, 1967]). Locality is recognized by the weight of authority as the test and determining factor with respect to applicable law as to whether there is admiralty tort jurisdiction. The State is without power to modify fixed maritime law so as to alter rights or liabilities measurable by standards of maritime law where such law is applicable. However, in suits of this nature for wrongful death occurring in navigable waters, State courts have concurrent jurisdiction with Federal courts. If the location of the accident, as here, brings maritime law into play "the substantive *rights and obligations* of the parties [arise] not out of the local law of New York State, but under the maritime law of the United States [citations], while any appropriate *remedy* afforded by the common law and the New York State death statute is saved" (*Kuhn* v. *City of New York*, 274 N. Y. 118, 129–130; *Riley* v. *Agwilines*, 296 N. Y. 402).

By reason of the fact that the act complained of, if wrongful, constitutes a maritime tort, the wrongful death statute of Illinois, under applicable Federal law, will govern the remedy.

Each order appealed from should be reversed on the law and the motion to strike the affirmative defense should be denied as to each, with costs and disbursements to appellant in each case.

Botein, P. J., Steuer, Capozzoli and McNally, JJ., concur.

Orders entered on October 13, 1967 unanimously reversed on the law, with $50 costs and disbursements to appellant in each appeal, and plaintiffs' motions to strike the second affirmative defense denied.