Armida **ALDRIDGE**, Appellant,

v.

**STATES MARINE CORPORATION OF DELAWARE**, a corporation, Appellee.

No. 15698.

United States Court of Appeals
Ninth Circuit.

April 23, 1959.

Gladstein, Andersen, Leonard & Sibbett, Richard A. Gladstein, Ewing Sibbett, San Francisco, Cal., for appellant.

Graham, James & Rolph, Chalmers G. Graham, Francis L. Tetreault, Robert E.

Patmont, San Francisco, Cal., for appellee.

Before POPE, HEALY and HAMLEY, Circuit Judges.

POPE, Circuit Judge.

After a decision in this case on March 16, 1959, a petition for rehearing was filed by appellee. The earlier opinion is withdrawn and the present one substituted therefor. Rehearing is denied.

■ Appellant, plaintiff below, brought this action as the widow and heir of William J. Aldridge, a longshoreman who died as the result of injuries he received while working as an employee of a stevedoring company in loading the S.S. Lone Star State, a ship owned and operated by the defendant corporation while the vessel was at berth at San Francisco. The action was brought in the Superior Court for the City and County of San Francisco, but removed to the court below on the petition of defendant on the ground of diversity of citizenship of the parties. Upon motion of defendant, plaintiff's amended complaint was dismissed. Leave to file a second amended complaint was denied. Plaintiff then appealed here.[1]

The sole question is the sufficiency of the complaint to state a claim. After argument and submission of the appeal here, the parties forwarded to the court additional citations. Upon noting that certiorari had been granted by the Su-

preme Court in one of those cases, and that other cases involving questions similar to the ones argued here were pending in that Court, we vacated the submission pending decision by the Supreme Court, ordering that upon the handing down of that decision, the case would be deemed resubmitted. The cases referred to were decided by the Supreme Court on February 24, 1959. As some of them, hereafter cited, are clearly determinative of this case, we now proceed to state the reasons for our decision.[2]

The complaint sought damages for the alleged wrongful death of William J. Aldridge, the longshoreman. It is based upon § 377 of the California Code of Civil Procedure, "permitting actions for damages for death caused by the wrongful act or neglect" of another.[3]

■ It alleges that as Aldridge was performing his work of stowing the cargo being loaded, he and the other longshoremen with him required dunnage made up of sticks and boards, for use in wedging and stowage of the cargo. As the dunnage was lowered into the hold it was held in bundles by metal bands. The longshoremen asked the defendant's officers for band cutters to break the bands. The latter advised they had no cutters, but sent a carpenter with hammers to do that work. For a time this method of opening the bundles was provided. Later, when it became necessary to break the bands of addi-

1. After the order dismissing the complaint, plaintiff moved for an order setting aside the order of dismissal "and to permit plaintiff to file a second amended complaint herein." This was denied July 25, 1957. The notice of appeal was from the order of dismissal and from the order of July 25, 1957 denying this motion to set aside the order of dismissal. Under these circumstances it is clear the decision was a final one and hence appealable. See Asher v. Ruppa, 7 Cir., 173 F. 2d 10, discussed in Williams v. Peters, 9 Cir., 233 F.2d 618.

2. On March 2, 1959, the Supreme Court also granted certiorari in Hess v. United States, 9 Cir., 259 F.2d 285. We see no

reason for further withholding decision here since the questions presented in that case do not resemble the problems now before us. The primary question in the Hess case was what law should govern liability, a matter not yet before us. The principal difference was that the Hess case was heard on evidence and decided on findings of fact. It was not disposed of by a dismissal based on the pleadings alone.

3. "§ 377 * * * When the death of a person * * * is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death * * *."

tional dunnage, similar requests were made of defendant's officers, "but the defendants did negligently and carelessly \* \* \* fail to provide or supply, either persons or proper means \* \* \* and by reason thereof the one means and method remaining to said longshoremen \* \* \* was to employ the hook secured to the winch, by inserting the same in the steel bands and thereafter raising the load of dunnage and attempting to break the steel bands by means of the weight of said dunnage, through raising the dunnage into the air and causing the weight thereof to break said straps; by reason of the aforesaid it was necessary to, and the said longshoremen did, use said method of breaking the dunnage straps for a period of several hours, during all of which the defendants negligently and carelessly failed to supply any band cutters, or any persons to cut or break said bands, and in the course of such operations, at approximately 1:55 o'clock a. m., upon the breaking of the bands of one of said dunnage loads several heavy timbers did break loose and did fall upon said William J. Aldridge, directly and proximately inflicting upon him serious and fatal injuries from which he died en route by ambulance to a hospital."

We think the complaint was sufficient to state a claim requiring the court to proceed to trial.

United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 520, 523, 3 L.Ed. 2d 541, dealt with an action brought in federal court by reason of diversity of citizenship to recover for wrongful death, based on the New Jersey wrongful death act, and upon claims both of unseaworthiness and negligence. The tortious conduct charged to the vessel owners occurred on navigable waters in New Jersey. The Court of Appeals upheld recovery on either unseaworthiness or negligence. Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n, 2 Cir., 251 F.2d 708. The Su-

preme Court disagreed as to the claim of unseaworthiness,[4] but approved the lower court's holding as to negligence, saying: "As to the claim based upon negligence, for which the New Jersey Wrongful Death Act clearly gives a right of action, we agree with the Court of Appeals that 'the evidence created an issue that could be decided only by a verdict.' "

The facts there have certain sharp resemblances to those alleged in the complaint here. The decedent Halecki was employed by an electrical contractor to work on defendant's ship's generators. Halecki and another were spraying the generators with carbon tetrachloride, a toxic compound. They knew it was an operation dangerous to humans if the fumes reached certain concentrations in the atmosphere. They took some precautions to procure ventilation, but there was evidence these were not "adequate to remove the fumes."

In each case, in Halecki and in this one, it could be said, in view of the risky procedures adopted by the subcontractor or the stevedoring company, as the Supreme Court did in the Halecki case: "It was for the triers of fact to determine whether the defendants were responsibly negligent in permitting or authorizing the method or manner of [their] use."

As was said in Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Had the facts here been developed through a pretrial conference, or on trial, the degree of knowledge which the ship's officers had, after they refused further to furnish the carpenter

---

4. The reason given was that the work performed by the plaintiff was not the type of work traditionally done by sea-

men within the rule of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

and his hammers, that a less safe method was in use, would have been made apparent for evaluation by the judge and jury. "No conclusion in such a case should prudently be rested on an indefinite factual foundation." Kennedy v. Silas Mason Co., 334 U.S. 249, 256, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347. It would be "good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts." Id., 334 U.S. at page 257, 68 S. Ct. at page 1034. Cf. Glus v. Brooklyn Eastern District Terminal, 79 S.Ct. 760.

The evidence which might be adduced under this complaint might even enhance the resemblance of the facts here to those in Halecki. It would appear then that Aldridge was in a position comparable to that of Halecki, of whom the Court of Appeals said (251 F.2d at page 711): "The deceased was certainly an 'invited person', or 'business guest,' and the shipowner was liable, not only for the negligence of the master, but, although the work was let out to a subcontractor, also for any lack of 'reasonable care to ascertain the methods and manner in which the concessionaire or independent contractor carries on his activities, not only at the time when the concession is let, or the contractor employed, but also during the entire period in which the concessionaire or contractor carries on his activities.' "[5]

We speak here of the shipowner's negligence.[6]

■ Appellee argues that the action is barred by contributory negligence. We think such argument is premature

here. We have before us only the complaint. Normally the existence of contributory negligence is a question for a jury. That the complaint shows that Aldridge was present when the alleged unsafe practices were in progress does not require us, at this stage of the case, to say that Aldridge was necessarily negligent. Halecki was doing the spraying in that case, and he was "aware of the necessity of taking special precautions in undertaking the job." Yet no judge who participated in that case, either in the Court of Appeals (including Judge Lumbard who dissented), or in the Supreme Court, suggested that Halecki was negligent as a matter of law. Even Judge Lumbard who in his dissent thought that contributory negligence was a defense, considered that the case should go back for a new trial "on the issue of negligence." (251 F.2d 713, 717).

In making its argument that contributory negligence bars this action, appellee says, (a) an action under a state wrongful death act must be governed by state law, and (b) contributory negligence of deceased is a defense in such actions in California. Even if such were the whole of the applicable law here, we would not, for the reasons stated in the preceding paragraph, assume to make a finding of contributory negligence at this, the pleading stage of this action. But appellee's statement of the law is incomplete. In its petition for rehearing, appellee asserts that in Halecki the Supreme Court "did not deal with the question of contributory negligence." On the contrary, the court made a significant statement on that point. It said: "For the reasons stated in M/V Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503,

5. The court was quoting from Restatement of Torts, Vol. II, § 344, comment b.

6. Plaintiff's original complaint contained two counts, one for unseaworthiness and one based on negligence. The unseaworthiness count was dropped, apparently on the assumption that the California Wrongful Death Act did not encompass such an action. Whether the remaining counts' allegations respecting a failure to supply means of cutting bands would measure up to an allegation of unseaworthiness under the second proposition stated in The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760, relating to "a failure to supply and keep in order the proper appliances appurtenant to the ship" is also a question we do not face here.

518, 3 L.Ed.2d 524, we hold that the Court of Appeals was correct in viewing its basic task as one of interpreting the law of New Jersey. For reasons also stated in Tungus, we accept in this case the Court of Appeals' determination of the effect which New Jersey law would accord to the decedent's contributory negligence."

The determination of the Court of Appeals thus accepted was as follows (251 F.2d 713): "[W]e hold that the New Jersey statute should be construed as taking over as a part of the model it accepted the exemption of contributory negligence as a bar." In that case the Court felt itself obliged to construe the New Jersey statute, N.J.S.A. 2A:31–1, although the courts of the state had never passed upon the question, for Halecki's case had been tried under instructions refusing to charge that contributory negligence was a bar.

In a similar manner the Supreme Court in M/V Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 508, 3 L.Ed.2d 524, refused to disturb the Third Circuit's interpretation of the New Jersey Wrongful Death Act as comprehending recovery for death of a longshoreman caused by unseaworthiness of a vessel. Said the Court: "Yet the fact is that the New Jersey courts have simply not spoken upon the question of whether in a case such as this maritime law or common law is applicable under the State's Wrongful Death Act. In sum, there is no way of knowing whether New Jersey would impose uniform legal standards throughout its jurisdiction, or would apply in this case rules different from those that would govern if, instead of meeting his death aboard the Tungus, Skovgaard had been killed on the adjacent dock. * * * The Court of Appeals, en banc, has given careful consideration to the meaning of the state statute. We cannot say that its conclusion is clearly wrong. Therefore, despite the inherent uncertainties involved, we will not disturb that court's interpretation of the New Jersey law."

In M/V Tungus, as in Halecki, the court had to say what the New Jersey rule would be, for the issue had to be decided. But here, no California decision has been rendered on the matter and we are not yet called upon, or required, to interpret the California Wrongful Death Act to determine whether California "would impose uniform legal standards throughout its jurisdiction, or would apply in this case rules different from those that would govern if, instead of meeting his death aboard * * * [Aldridge] had been killed on the adjacent dock."[7] Before that question reaches the district court, after this remand, the California courts may have settled the question; or, on the trial below, the jury may find no negligence on the part of the defendant. It may well be that the issues stated in the complaint may be altered on pretrial or by amendment. We hold the question of whether the action is barred by contributory negligence is not now before us.

Reversed and remanded.

7. There is no point in attempting to predict what the California courts may decide. They might be persuaded that the reasoning followed by the Second Circuit in its construction of the New Jersey Act would appropriately be applied to the California Act; or they might be influenced by a consideration of the desirability of uniformity in the law relating to fatal and non-fatal injuries from maritime torts.