**William KNOX**

v.

**UNITED STATES LINES CO.**

v.

**T. HOGAN CORPORATION.**

**Civ. A. No. 23807.**

United States District Court
E. D. Pennsylvania.

Aug. 1, 1960.

---

Freedman, Landry & Lorry, S. Gerald Litvin, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Harrison G. Kildare, Philadelphia, Pa., for defendant.

WOOD, District Judge.

The plaintiff is a longshoreman who was injured while unloading a cargo of burlap rolls from defendant's vessel. The jury found that the accident was caused by the negligence of the plaintiff and the other longshoremen in the manner in which they attempted to dislodge the top roll of burlap from a pyramid of rolls eight feet high. Their carelessness caused the pyramid to "cave in," injuring plaintiff.

The basic question presented by plaintiff's motions is whether the negligence of the longshoremen renders the defendant-shipowner liable to the plaintiff. The plaintiff contends that his negligence and that of the other longshoremen created an unseaworthy condition aboard the vessel, and/or that the shipowner was negligent in permitting the longshoremen to employ dangerous methods of handling the burlap rolls.

Before discussing the merits of plaintiff's contentions, we think it necessary to describe briefly the conduct of the trial. The plaintiff presented his case to

the jury in the posture of a dispute as to whether the stowage of the burlap rolls without chocks or dunnage was proper. In fact, in his summation to the jury, plaintiff's attorney spoke exclusively of the stowage of the cargo, and asked the jury to find that the stowage made the ship unseaworthy, or created an unsafe place to work, or that the shipowner was negligent in allowing the cargo to be stowed without dunnage or chocks. *Not once* did plaintiff's attorney mention the possibility of finding the ship unseaworthy or the shipowner negligent *only* because of the longshoremen's negligence in breaking down the rolls. The closest he came to enunciating such a theory was to agree with defendant's attorney that a *combination* of improper stowage and the manner of discharging the cargo employed by the longshoremen might have rendered the ship unseaworthy.[1]

Having received proper instructions by the Court on negligence, unsafe place to work, and unseaworthiness in relation to the stowage of the cargo, the jury found by answers to special interrogatories that the stowage of the cargo did *not* create an unsafe place to work, or render the ship unseaworthy, and that the defendant-shipowner was not negligent. The plaintiff's attorney then moved the Court to enter judgment for the plaintiff, arguing that *as a matter of law* the negligence of plaintiff and his coworkers rendered the shipowner liable

to the plaintiff. The motion was denied and is now before us again in the form of a motion to amend the judgment in favor of the plaintiff and against the defendant-shipowner.

We consider first the plaintiff's contention that as a matter of law the negligence of the longshoremen rendered the ship unseaworthy. We are fully aware that a ship may be found unseaworthy solely because of some negligent conduct on the part of longshoremen working aboard the ship. The plaintiff himself may be guilty of the negligent conduct which is found to have created an unseaworthy condition aboard ship. For example, in the case of Petterson v. Alaska S. S. Co.[2] the longshoremen apparently brought on board the respondent's ship a wooden block on which to stand while they performed their work. The block was defective and broke under the weight of the plaintiff while he was standing on it. The ship was held to be unseaworthy, and on appeal this holding was affirmed. The reason given was that a shipowner has a non-delegable duty to furnish men working on board the vessel with safe working appliances. In this case, because of the failure of the shipowner to furnish the men with such appliances, they were forced to resort to the device of the wooden block and as a result the plaintiff was injured.

Similarly, in the case of Crumady v. The Joachim Hendrik Fisser, et al.,[3] the

---

[1.] Plaintiff's theory that the cargo was stowed improperly was almost completely destroyed by the testimony of defendant's witnesses to the contrary. The progress of the trial was disrupted by continuous objections by plaintiff's counsel, many of which served no purpose that we could perceive other than to harass the Court and obfuscate the issue. As Justice Brennan recently stated, the Federal Courts aim toward an efficient justice with a minimum of legal maneuvering and surprise at trial. Such trial tactics severely hamper the Courts in their constant efforts to bring litigation to a speedy and just termination. Our task is made needlessly difficult by objections to matters which are clearly within the Court's discretion, such as the number of challenges to the jury and the

order of counsel's closing argument—both of which were objected to in this case by plaintiff's attorney. Furthermore, in a case revolving around the sole issue of whether or not the cargo was properly stowed plaintiff's counsel submitted 31 points for charge, many of which were stated in terms much too broad and too general as compared to the holdings of the cases cited in support thereof. Aside from their debilitating effect upon the judicial process such tactics do not aid the cause of the attorney's client.

[2.] 9 Cir., 1953, 205 F.2d 478, affirmed per curiam 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

[3.] 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413.

plaintiff was injured when the winch stuck, the rigging broke, and the boom struck the plaintiff. The winch was in perfectly good condition and had a safety cutoff device which cut off the power when a weight over and above the safe working limit was placed on the rigging. The safe working limit was three tons. When the longshoremen, who were operating the winch at the time of the accident, started the operation they noticed that the safety cutoff device was set at six tons—a weight twice as much as the safe working limit. Knowing the safe limit to be three tons, the longshoremen nevertheless failed to change the safety cutoff device and as a result, the accident occurred. The Court found that the ship was unseaworthy. On appeal this finding was affirmed. The reason given was that the duty of a shipowner includes the duty not only to furnish men with safe appliances, but also to keep those appliances in safe working order. The finding of the District Judge that the setting of the safety cutoff device at six tons made the winch an appliance in unsafe working order was not "clearly erroneous," said the Supreme Court. The Court went on to expound its reasoning as follows [358 U.S. 425, 79 S.Ct. 448]:

> " * * * [T]here is ample evidence to support the finding that these stevedores did no more than bring into play the unseaworthy condition of the vessel. The winch—an appurtenance of the vessel—was not inherently defective as was the rope in the Mahnich case. But it was adjusted by those acting for the vessel owner in a way that made it unsafe and dangerous for the work at hand. While the rigging would take only three tons of stress, the cutoff of the winch—its safety device—was set at twice that limit. This was rigging that went with the vessel and was safe for use within known limits. Yet those limits were disregarded by the vessel owner

when the winch was adjusted. The case is no different in principle from loading or unloading cargo with cable or rope lacking the test strength for the weight of the freight to be moved."

It must be noted that in both the Petterson and Crumady cases the ship was held to be unseaworthy *by the trier of fact*. On appeal, that finding was affirmed and reason given was, in each case, that the shipowner had failed to furnish *safe* working appliances necessary for the work to be performed on board by the longshoremen. This is simply not the situation in the case at bar. Nowhere has it been argued that the plaintiff here was injured because of the failure of the defendant-shipowner to provide any *equipment* which the men needed in unloading these burlap rolls. This distinction between the case at bar and the cases discussed is vital because the seaworthiness of a ship pertains to the vessel herself, her crew and her gear or appurtenances. A ship is unseaworthy *only if* the vessel or her gear are not reasonably safe for the use for which they were intended; the crew is not made up of men possessing the skills and temperament of ordinary seamen; or the shipowner fails to furnish equipment necessary for the performance of ordinary shipboard work.[4] No matter how the evidence in the case at bar is tortured, it simply cannot fit into the accepted definition of unseaworthiness: i. e., negligent handling of properly stowed cargo does not create a flaw in the vessel, her gear, or her crew.

Therefore, we think that as a matter of law the ship in the case at bar was *not* rendered unseaworthy by the negligent conduct of the longshoremen.

We next consider the plaintiff's contention that the longshoremen's negligence in handling the burlap rolls should not have been permitted by the ship's officers and that their failure to stop the

---

4. Boudoin v. Lykes Bros. Steamship Co., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L. Ed. 354; and Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed. 2d 941 (decided May 16, 1960).

longshoremen from employing such dangerous methods rendered the shipowner negligent as a matter of law. Plaintiff argues that if the jury's finding of negligence on the part of the longshoremen did not require the entry of judgment for the plaintiff as a matter of law, we should have submitted additional interrogatories to the jury specifically asking whether or not the shipowner had failed in its duty to use reasonable care in overseeing the progess of the longshoremen's work.

■ At the trial we refused to either enter judgment for the plaintiff or submit such additional interrogatories to the jury. We are now presented with the same issues by plaintiff's motions to amend the judgment or to grant a new trial.

Plaintiff's argument proceeds as follows:

"Whether or not the shipowner had actual knowledge of the improper and unsafe methods which were being employed by the stevedoring company aboard its vessel makes no difference in considering its [shipowner's] negligence since, by operation of law, it has the affirmative duty to ascertain the methods employed by independent contractors aboard its vessel * * * during the progress of the work * * *"

In support of this statement, plaintiff relies upon the cases of Halecki v. United New York and New Jersey Sandy Hook Pilots Association, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541; Aldridge v. States Marine Corp. of Delaware, 9 Cir., 1959, 265 F.2d 554; and Casbon v. Stockard Steamship Corp., D.C.E.D.La. 1959, 173 F.Supp. 845. We think it necessary to discuss these cases in some detail.

In the Halecki case, Halecki and a coworker came on board the defendant's ship to clean the ship's generators with carbon tetrachloride. The men brought gas masks, fans and air hoses on board with them as a precaution against the deadly fumes of the carbon tetrachloride. Nevertheless, Halecki died from carbon tetrachloride poisoning. The jury returned a general verdict for the plaintiff under instructions that even if they found the shipowner had used due care, they could still find for the plaintiff if they found the ship unseaworthy. On appeal the judgment was vacated and the case remanded for a new trial. The court held that as a matter of law Halecki could not sue on the theory of unseaworthiness since he was not a "seaman" as that term has recently been defined by the court. With regard to the negligence of the shipowner, the court merely decided that the jury must consider the case again on that theory only. In this regard, the court stated that the defendant was "charged with knowledge that carbon tetrachloride was to be used in the confined spaces of the engine room. It was for the triers of fact to determine whether the defendants were responsibly negligent in permitting or authorizing the manner of its use." At page 619 of 358 U.S., at page 520 of 79 S.Ct.

We think that the Halecki case indicates that the question of whether or not a shipowner is responsible for an independent contractor's negligent performance of work aboard ship is a question for the trier of the facts. Therefore, in the case at bar, plaintiff's contention that the shipowner was negligent *as a matter of law* for failing to stop the longshoremen from using a dangerous method of handling the burlap rolls is completely without merit. The next question is whether or not in the case at bar the issue of the shipowner's responsibility should have been submitted to the jury.

In the Casbon case the libellant was a longshoreman employed to build a 15-foot-high wall of planks in the hold of respondent's vessel to prevent the cargo of grain from lying against hot pipes running along side of the ship. It was customary in building such walls to use only second-class boards. Knowing that the longshoremen would have to have something to stand on in order to build a 15-foot-high wall, respondent-shipown-

er nevertheless failed to provide the men with appropriate ladders. As a result, the longshoremen erected scaffolding made from the same second-class boards as were being used for the wall. The scaffold broke under the weight of the libellant, injuring him. The court, acting as trier of the facts, *specifically found that the respondent was or should have been aware* that the custom was to use second-grade lumber in erecting the wall and scaffold. Based on that finding, the court concluded that the shipowner had been negligent in failing to use due care in furnishing the libellant with a safe place to work.

The Casbon case is readily distinguishable from the case at bar. In the case at bar there is no evidence from which the trier of the facts could have found that defendant-shipowner was or should have been aware that the longshoremen were attempting to unload the burlap rolls in a dangerous fashion. There was no evidence that the longshoremen's method of breaking down the pyramid of rolls was the customary method. There was no equipment, such as the ladder in the Casbon case, with which the defendant-shipowner could have provided the longshoremen which would have changed their method of handling the rolls. Therefore, we think that the jury *could not* have found the defendant-shipowner responsibly negligent in permitting or authorizing the method used by the longshoremen.

Finally, we come to the Aldridge case. In that case the plaintiff's decedent had been a longshoreman engaged in loading cargo aboard the defendant's ship. Dunnage bound by steel bands was being loaded into the hold where decedent was working. The longshoremen had asked the ship's officers for *cutters with which* to cut the steel bands binding the dunnage. When the ship's officers failed to supply such tools, the longshoremen devised the following method of breaking the bands: They inserted the winch hook under the bands and allowed the weight of the dunnage upon the hook to break the bands. *This procedure was followed*

*for several hours,* when a heavy timber broke loose from a load of dunnage and fell upon the plaintiff's decedent. In the trial court, the complaint was dismissed for failure to state a claim upon which relief could be granted. On appeal, this dismissal was reversed and the case remanded for trial. The Circuit Court, relying on the Halecki case, said [265 F.2d 556]:

"It was for the triers of fact to determine whether the defendants were responsibly negligent in permitting or authorizing the method or manner of [their] use."

But the court added:

"Had the facts here been developed through a pre-trial conference, or on trial, *the degree of knowledge which the ship's officers had * * * that a less safe method was in use,* would have been made apparent for evaluation for the judge and jury." At pages 556, 557 of 265 F.2d.

As we understand the law, the factors necessary in order to find a shipowner responsibly negligent for a dangerous condition created aboard ship by an independent contractor is no different than the factors necessary to find any other property-owner negligently responsible for a dangerous condition on his property similarly created. That is to say, before the trier of fact may find such property-owner negligent, there must be evidence from which the trier of fact could conclude that the owner *knew or should have known* of the existence of the dangerous condition. In the case at bar, there was no evidence whatsoever from which the jury could have concluded that the defendant-shipowner knew or should have known that the longshoremen were engaging in this dangerous practice, assuming of course that they were, since the act which caused the plaintiff's injury was an instantaneous thing.

In conclusion, we comment on the case of Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941

(decided May 16, 1960). In that case plaintiff sued the shipowner under the Jones Act, 46 U.S.C.A. § 688, alleging unseaworthiness and negligence. The ship had just come back from a fishing voyage and her rails were covered with slime from the fishermen dragging the catch across the rails. The judge charged the jury that they should find for the plaintiff only if they found that the slime had been on the rails for a reasonably long period of time so that the shipowner could have removed it. The issue on appeal was whether or not, with respect to so-called "transitory unseaworthiness," the shipowner's liability is limited by concepts of common law negligence.

The Supreme Court reversed the trial court and held that a shipowner's liability for unseaworthiness is completely independent of his duty to exercise reasonable care, and that "notice" is not necessary to a finding of permanent or transitory unseaworthiness of the vessel. In its opinion, the court stated, we think significantly, the following:

> "What has been said is not to suggest that the owner [of the ship] is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a *vessel and appurtenances* reasonably fit for their intended use." (Emphasis supplied.)

Plaintiff interprets this case as doing away with accepted notions of the need for finding notice in order to find negligence. We think it is clear, however, that the court was speaking in the Mitchell case of *unseaworthiness only* when it stated that a finding of notice was not necessary to a finding of permanent or transitory unseaworthiness.

■ We will not discuss separately plaintiff's complaints about our failure to read certain of plaintiff's points for charge and our reading of certain of defendant's points, since our reasons for so doing should be apparent from the foregoing discussion. However, we do note that through oversight we neglected to instruct the jury that the defendant-shipowner, a corporation, was responsible for the actions of its employees. We think that this oversight clearly did not amount to prejudicial error.

### Order

And now, to wit, this 1st day of August, 1960, It Is Hereby Ordered, for all of the foregoing reasons, that plaintiff's motion to amend the judgment, or in the alternative for judgment N.O.V., or in the alternative for a new trial is hereby denied.