**William KNOX**

v.

**UNITED STATES LINES CO.**

v.

**T. HOGAN CORPORATION.**

Civ. A. No. 23807.

United States District Court
E. D. Pennsylvania.

Jan. 18, 1962.

Freedman, Landy & Lorry, Philadelphia, Pa., by S. Gerald Litvin, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Philadelphia, Pa., by Harrison G. Kildare, Philadelphia, Pa., for U. S. Lines Co.

Krusen, Evans & Byrne, Philadelphia, Pa., by Robert Cox, Philadelphia, Pa., for T. Hogan Corp.

WOOD, District Judge.

Plaintiff William Knox on December 20, 1957, instituted the above action claiming that defendant United States Lines Company, owners and operators of the S.S. "American Builder", were responsible to him in damages for the negligent operation of the ship and for its unseaworthiness. On March 24, 1958, T. Hogan Corporation, employers of plaintiff, was joined as a third-party defendant. Subsequently, the case went to the jury on special interrogatories resulting in a verdict in favor of the original defendant.[1] Following the denial of a motion for a new trial and judgment n.o.v. (opinion filed August 1, 1960, D.C., 186 F.Supp. 668), an appeal was taken. On June 21, 1961, the United States Court of Appeals for the Third Circuit, 294 F.2d 354 filed its opinion sustaining the denial in part but remanding the cause "for a partial new trial limited to the issue of possible unseaworthiness caused by the

---

1. In the special interrogatories the jury found that plaintiff was guilty of contributory negligence to the extent of twenty-five percent, to which reference is made infra.

manner of breaking down the stowage and any third-party liability resulting therefrom." [2]

After a pre-trial conference held on October 16, 1961, counsel agreed to waive trial by jury and to permit the Court to decide the issues based on the record of the prior trial and further argument, reserving, as aforesaid, the issue of damages for jury trial at a later date, if necessary. The issues were limited to:

1. Whether the seven or eight foot "V" dug out in the stowage by the longshoremen constituted an unseaworthy condition; namely, as the condition of the stow existed at that time, was the ship reasonably safe for the purposes for which it [the ship] was intended.

2. Whether the plaintiff was contributorily negligent and if so, what percentage of the fault was his.

An appropriate Order was entered on November 8, 1961, and listed for argument on November 14, 1961. Due to unavoidable delays, final argument was held on January 4, 1962, after which recommended findings of fact and conclusions of law were filed by all parties in interest on all matters before us for disposition.

## FINDINGS OF FACT

1. The Court has jurisdiction over the parties and subject matter of this controversy.

2. On July 26, 1957, the plaintiff was injured while working aboard defendant's vessel, the S.S. "American Builder" which was then in navigable waters and docked in the port of Philadelphia.

3. At the time of the accident plaintiff was employed by third-party defendant T. Hogan Corporation to assist in discharging a cargo of heavy rolls of burlap from the No. 5 lower hold of the ship.

4. The rolls of burlap were of various sizes ranging in length from five to twenty feet, in diameter from two to four feet, and in weight from 1000 to 1500 pounds.

5. Plaintiff and his fellow workers started in the No. 5 lower hold between 9:15 and 9:30 a. m. and began by discharging the rolls of burlap stowed fore and aft in the center of the hatch.

6. The method of stowage of the rolls of burlap was safe and proper and in that respect the vessel was seaworthy.

7. Plaintiff and three fellow longshoremen discharged the rolls in such manner as to create a V-shaped cut downward into the stow, which opening at the time of the accident was six or seven feet deep.

8. Plaintiff and his co-workers could just about reach the top roll from their position at each end of the tiers. Plaintiff stood at one end and his three co-workers stood at the other end to dislodge a roll so that it would fall down the slanting surface of the stow. In order to do so, plaintiff crowded his body into a narrow space at the forward end of the tiers which was barely wide enough for a man's body.

9. While the plaintiff and the three longshoremen with whom he was working were in this position from two to four rolls of burlap in the middle of the stow supporting the top roll gave way and one of them struck and injured the plaintiff.

10. Due to the narrow space in which plaintiff had confined himself during the above operation, he was unable to avoid being struck by the roll.

11. The usual, customary and proper manner of handling this type of cargo is to "break down" the rolls to a depth "man height" or approximately to the shoulders of the longshoremen and then to stand in front of the exposed surface and ease the burlap rolls down cantline by cantline or tier by tier.

12. The proximate cause of the injuries sustained by the plaintiff was (1) in placing himself in a position where he

[2.] A per curiam opinion was filed on July 14, 1961 in this same case related to a correction of the judgment and suggested that this Court have in mind the prior opinion in disposing of the issue. Accordingly, by our Order of November 9, 1961, the judgment was corrected.

could not avoid being struck by the roll of burlap when it became dislodged from the tier and (2) by the method employed in attempting to remove the roll of burlap from the top of the tier to the bottom. The height of the "V" (six to seven feet from the direct testimony as distinguished from the figure of seven to eight feet or more used by counsel on cross-examination) was not a substantial factor in causing the injuries to plaintiff.[3]

13. At all times herein referred to the stowage, appurtenances and the ship itself was reasonably safe for the uses and purposes for which it was intended and for any work required to be done upon it, including discharge of cargo.

## CONCLUSIONS OF LAW

■ The issue in this case may be narrowed to the question as to whether the injuries suffered by plaintiff were caused by negligence or the unseaworthiness of the vessel. Based on our understanding of the opinion of the United States Court of Appeals for the Third Circuit in this same case, filed June 21, 1961, the question of negligence no longer exists and it is incumbent on us to determine whether or not at the time of the injuries the vessel was seaworthy. We have concluded that it was and that the injuries were a result of negligence on the part of the plaintiff and his fellow longshoremen. In Holley v. The Manfred

Stansfield, D.C., 186 F.Supp. 212, 214, the Court said:

"We turn to the issue of unseaworthiness. The vessel did become unseaworthy when the decedent, by his own actions in the use of the 'payloader' and contrary to instructions from his superior, created an overhang of the solidified potash. Minutes later, in an effort to loosen the cargo by striking the solid mass with the 'payloader', a block of potash approximately four feet square fell upon the decedent causing his death. The creation of the overhang, even though slight, brought about a condition of unseaworthiness and is recognized by experts in the field as a condition which should not exist and which rendered the vessel reasonably unfit for its normal function."

In our case, we have concluded from the factual evidence before us that the height of the "V", assuming, *arguendo*, that it was dangerous, did not in fact cause the injuries to this plaintiff. We have concluded that the injuries were caused because the longshoreman attempted to remove the burlap by standing at the ends of the rolls and in a confined space where it was impossible for him to protect himself. In the Holley case, reference is made to Mitchell v. Trawler

---

3. Considerable emphasis has been placed on the height of the "V". The opinion of the United States Court of Appeals for the Third Circuit refers to "whether the seven or eight foot "V" dug out" etc., and plaintiff in his suggested findings of fact No. 6 refers to a "depth of seven or eight feet" relying on the notes of testimony at pp. 11, 12 and 85. At p. 11 the plaintiff himself testified, "Well, the top roll was just about seven feet. He could just about reach the middle of the roll." At p. 12, no reference is made to the depth or height and on p. 85, no reference is made to it. On the other hand, at p. 32, on cross-examination, plaintiff again stated: "Yes, sir, I would say just about six or seven feet." And on p. 65 in response to a question directed to one Bos-

well, a witness for plaintiff, he stated: "Well, in my opinion, around six or seven feet." There are occasions when counsel used such figures as eight feet in their questions, but we have been unable to determine in the testimony any proof beyond six to seven feet. Also, under suggested findings of fact No. 6, plaintiff makes reference to defendant's answers to interrogatories, paragraph 2(a), where the following language does appear: " * * * leaving a pile about eight feet high." We have examined the record before us carefully and are unable to find from our research that these interrogatories were ever offered in evidence, assuming they would outweigh the direct proof of a height not in excess of seven feet.

Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), as follows:

"* * * the Supreme Court pointed out that there has evolved a complete divorcement of unseaworthiness liability from concepts of negligence; that the doctrine of 'transitory' unseaworthiness is no longer a defense; that the obligation to provide a seaworthy vessel is absolute—a species of liability without fault—an absolute duty owing to all within the range of its humanitarian policy; and, finally, that liability for a temporary unseaworthy condition is the same as liability which attaches when the condition is permanent." (At p. 214 of 186 F. Supp.)

Plaintiff's counsel relies heavily on the Mitchell case and with some justification. Of course, the word "transitory" is of extreme importance in that decision, but we cannot rely on that case in determining the one before us since, as we have stated, we cannot conclude from this evidence that there was any unseaworthiness either "transitory" or "permanent". Again, in Grillea v. United States, 2 Cir., 232 F.2d 919, 923, Judge Learned Hand said:

"* * * It may appear strange that a longshoreman, who has the status of a seaman, should be allowed to recover because of unfitness of the ship arising from his own conduct in whole or in part. However, there is in this nothing inconsistent with the nature of the liability because it is imposed regardless of fault; to the prescribed extent the owner is an insurer, though he may have no means of learning of, or correcting, the defect."

Here, too, we face the same dilemma. If we could conclude from this evidence that the creation of the "V" made this ship unseaworthy, temporarily or permanently, then plaintiff should recover. But, in our opinion, the plaintiff has not carried the burden of proving the existence of such a condition under all the testimony submitted at the original trial.

■ Plaintiff seems to argue that when negligence exists and an accident occurs on board ship *a fortiori* unseaworthiness must be present. This we cannot accept as a rule of law nor as a finding of fact under the proofs in this case.

■ In the event that we have erred in our conclusions the question of the contributory negligence of the plaintiff should be disposed of. Our Order after conference clearly stated that we should determine whether the plaintiff was contributorily negligent and, if so, what percentage of the fault was his. It will be recalled that the jury which first heard the case found him guilty to the extent of twenty-five percent. Plaintiff suggests that we are not bound by that and that we should either find him not contributorily negligent or in the alternative to the extent of six and one-quarter percent. On the other hand, the original defendant argues that the special interrogatories at the original trial are binding upon the Court in this retrial and the third-party defendant makes reference only in his findings of fact by suggesting that plaintiff was contributorily negligent in the percentage of one hundred percent. We understood then and now, and the literal interpretation of our Order makes it clear, that we are to determine the extent of the contributory negligence, if any, based on the record and not on the finding of the original jury. In any event, our finding agrees with theirs, and if it is of importance, we conclude as a matter of law that plaintiff was guilty of contributory negligence to the extent of twenty-five percent. Our finding in that regard is based in part on the fact that the plaintiff was acting under orders of his superior and in conjunction with at least three other longshoremen at the time the accident occurred.

## ORDER

And now, to wit, this 18 day of January, 1962, Judgment is entered in favor

of the defendant United States Lines Co. on the issue of liability and Judgment is entered in favor of third-party defendant T. Hogan Corporation in the third-party action brought against it by the defendant United States Lines Co.