**Charles H. SMITH, Jr., et al.**

v.

**ALLSTATE YACHT RENTALS, LTD., a Delaware corporation and William H. Porter, Jr.**

Superior Court of Delaware, New Castle.

May 19, 1972.

David Roeberg, Wilmington, for plaintiffs.

Warren B. Burt, Wilmington, for Allstate Yacht Rentals, Ltd.

BIFFERATO, Judge.

This is the Court's decision on the pretrial questions of jurisdiction and the measure of damages.

Richard K. Smith (decedent), a Delaware resident, was employed by Allstate Yacht Rentals, Ltd. (Defendant), a Delaware corporation, to do maintenance and repair work on the pleasure yacht known as the "Tautog". On August 27, 1970, the Tautog was docked at Ocean City, New Jersey at the Harbor House Motel Marina. At approximately 3 P.M. on August 27th Richard K. Smith, while in the employ of the defendant, was electrocuted in the hold of the yacht. The plaintiffs, the administrator of the decedent's estate, his parents, brothers and sisters, allege that at the time of the accident the Tautog was unseaworthy and seek damages for the wrongful death of the deceased under the law of Admiralty and Maritime.

■ A common law action now exists under the general maritime law for wrongful death. In 1886, in The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, the United States Supreme Court had held that in the absence of statute, no common law action would lie for recovery for wrongful death. In a landmark decision in 1970, the Supreme Court explicitly overruled The Harrisburg in Moragne v. States Marine

Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970):

" . . . (we) overrule *The Harris-burg* and hold that an action does lie under general maritime law for death caused by violation of maritime duties."

The defendant advances three contentions to support his proposition that there is no right of action under *Moragne* which may be enforced by this Court: (1) that a federal common law right was announced in *Moragne* that is enforceable exclusively in federal court; (2) that the *Moragne* decision does not reach the actions of seamen against their employers; and (3) that Section 33 of the Merchant Marine (Jones) Act (46 U.S.C.A. § 688) provides the exclusive right of action for the death of a seaman. In addition, the defendant contends that "the overriding principle that uniformity is essential in application and exercise of federal rights" indicates that this Court should not accept jurisdiction.

■■■■■ General maritime rights may be enforced in state courts. Article 3, Section 2, Clause 1, of the United States Constitution extends federal judicial powers to cases of admiralty and maritime jurisdiction.[1]

By enacting the Judiciary Act of 1789 Congress implemented this grant of federal judicial power. The relevant portion of the act, in terms of this case, appears in its present form at 28 U.S.C.A. § 1333:

*§ 1333. Admiralty, maritime and prize cases*

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled . . .

The "saving of suitors" clause of this section has been construed to mean that federal and state courts enjoy concurrent jurisdiction over maritime causes of action where a suit is brought to obtain a judgment *in personam* against the party liable. See Taylor v. Carryl, 20 How. 583, 61 U.S. 583, 15 L. Ed. 1028 (1858); and Leon v. Galceran, 11 Wall. 185, 78 U.S. 185, 20 L.Ed. 74 (1871). The defendant's contention that there are federal common law rights in admiralty that may be enforced only in federal courts is without foundation. In Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922), where the defendant appealed a verdict for the plaintiff in the courts of the State of Washington for damages on account of injuries suffered while employed on the defendant's motorboat in the navigable waters of Alaska, the United States Supreme Court specifically noted that "The general rules of the maritime law apply whether the proceeding be instituted in admiralty or common-law court. Chelentis v. Luckenbach Steamship Co. . . . [247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171]; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 159, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145." In *Sandanger*, the Court determined that the State courts had erred in not giving jury instructions consonant with maritime law. (The State court was affirmed on other grounds). A suitor who holds an *in personam* claim which may be enforced by libel (complaint) *in personam* in admiralty has the option of seeking his common law remedies in state court or remedies at law (given diversity of citizenship and the requisite jurisdictional amount) or in admiralty in federal court. See Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); and G. Gilmore and C. Black, The Law of Admiralty, § 1–13 (1957). If a state court is selected as the forum, the court is bound to apply federal maritime law. See Moragne v. States Marine Lines, Inc., supra.

[1]. Article 3, Section 2, Clause 1 of the United States Constitution provides in pertinent part:

"The judicial power shall extend . . . to all Cases of admiralty and maritime Jurisdiction. . . ."

In the present case, the plaintiffs seek damages from the defendant corporation, Allstate Yacht Rentals, Ltd., for the deceased's wrongful death. Where the defendant is a person, including a corporation, as in this instance, and not a ship or some other instrument of navigation, the proceeding is classified as *in personam*. See Madruga v. Superior Court of State of Cal. in and for San Diego County, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290 (1954); and Chambers-Liberty Counties Nav. Dist. v. Parker Bros. & Co., 263 F.Supp. 602 (D.C.1967). The plaintiffs' suit being *in personam*, this Court has jurisdiction to enforce the common law right of action for wrongful death announced in Moragne v. States Marine Lines, Inc., supra.

The defendant asserts that the Supreme Court's decision in *Moragne* does not reach the actions of seamen against their employers. In *Moragne* a longshoreman was killed while working aboard a vessel within the navigable waters of a state. The holding in *Moragne*, however, broadly created a cause of action under general maritime law for wrongful death. Federal courts have already begun to apply the *Moragne* doctrine in wrongful death actions against a seaman's employer. In Petition of Canal Barge Company, 323 F.Supp. 805 (N.D.Miss., 1971), a seaman died when a boat collided with a bridge spanning the Mississippi River. The seaman's wife made a claim against her husband's employer, the owner of the vessel. The claim was based upon the Jones Act and the general maritime law. The Court, citing *Moragne*, stated:

> "Mary Katherin Griffith, as administratrix, has standing to sue for the claims arising from the death of George Griffith in the course of his employment by Canal, under both the Jones Act and the general maritime law."

In the present case, the decedent was electrocuted while in the employ of the defendants, the owner of the yacht. The general policy announced by the Supreme Court of favoring recovery for wrongful death, absent a legislative directive to except a particular class of cases, requires that the doctrine of *Moragne* include wrongful death actions against a seaman's employer. See Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1783; Petition of Canal Barge Company, supra.

The defendant asserts that the Jones Act provides the exclusive right of action for the death of a seaman. In *Moragne*, the Supreme Court was presented with three anomalies that would be perpetuated by following the doctrine of *The Harrisburg*. Assertedly the strangest anomaly was that "a true seaman—that is, a member of a ship's company, covered by the Jones Act—is provided no remedy for death caused by unseaworthiness within territorial waters, while a longshoreman, to whom the duty of seaworthiness was extended only because he performs work traditionally done by seamen, does have such a remedy when allowed by a state statute." Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1785. The Court commented on this anomaly and the effect of its decision in *Moragne*, on the relationship between the Jones Act and suits on behalf of seamen:

> A joint contributor to this last situation, in conjunction with the rule of The Harrisburg, is the decision in Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), where the Court held that the Jones Act, by providing a claim for wrongful death based on negligence, precludes any state remedy for wrongful death of a seaman in territorial waters—whether based on negligence or unseaworthiness. The Court's ruling in *Gillespie* was only that the Jones Act, which was "intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution, * * * necessarily supercedes the application of the death statute of the several States." *Id.*, at 155, 85 S.Ct., at 312. The ruling thus does not disturb the seaman's rights under general

maritime law, existing alongside his Jones Act claim, to sue his employer for injuries caused by unseaworthiness, see McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958), or for death on the high seas caused by unseaworthiness, see Kernan v. American Dredging Co., 355 U.S. 426, 430 n. 4, 78 S.Ct. 394, 397, 2 L.Ed.2d 382 (1958); Doyle v. Albatross Tanker Corp., 367 F.2d 465 (C.A.2d Cir. 1966); cf. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Likewise, the remedy under general maritime law that will be made available by our overruling today of *The Harrisburg* seems to be beyond the preclusive effect of the Jones Act as interpreted in *Gillespie*. The existence of a maritime remedy for deaths of seamen in territorial waters will further, rather than hinder, "uniformity in the exercise of admiralty jurisdiction"; and, of course, no question of preclusion of a *federal* remedy was before the Court in *Gillespie* or its predecessor, Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930), since no such remedy was thought to exist at the time those cases were decided. See Gilmore & Black, supra, at 304; but cf. Kernan v. American Dredging Co., 355 U.S. at 429–430, 78 S.Ct. at 397.

(Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1785)

The Jones Act, therefore, provides a remedy for seamen exclusive of state wrongful death acts. The Supreme Court's construction of the *Gillespie* and *Lindgren* cases in *Moragne* requires a decision that the Jones Act does not preclude a right of action for the wrongful death of a seaman due to unseaworthiness under the general maritime law.

■ The defendant contends that the Supreme Court's concern in *Moragne* to bring about uniformity in the exercise of admiralty jurisdiction means that general maritime common law actions should be tried exclusively in federal courts. In *Moragne*, however, the uniformity which concerned the Court was uniformly permitting recovery in wrongful death actions and uniform effectuation of the duty to provide a seaworthy ship. See Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1785, 1788. In addition, to reach the result desired by the defendant would require the Court to disregard the "saving to suitors" clause. Absent a new Supreme Court interpretation of the "saving to suitors" clause, the defendant's contention is not well taken.

Two questions remain to be determined: (1) the beneficiaries who may recover under the general maritime law; and (2) the measure of damages.

■ The Supreme Court, in *Moragne*, while considering the effect on maritime law that would be produced by overruling *The Harrisburg*, discussed the reasoning of the United States, participating as *amicus curiae*, on who may recover in a wrongful death action under general maritime law:

[The Death on the High Seas Act] is the congressional enactment that deals specifically and exclusively with actions for wrongful death, and that simply provides a remedy—for deaths on the high seas—for breaches of the duties imposed by general maritime law. In contrast, the beneficiary provisions of the Jones Act are applicable only to a specified class of actions—claims by seamen against their employers—based on violations of the special standard of negligence that has been imposed under the Federal Employers' Liability Act. That standard appears to be unlike any imposed by general maritime law. Further, although the Longshoremen's and Harbor Workers' Compensation Act is applicable to longshoremen its principles of recovery are wholly foreign to those of general maritime law—like most workmen's compensation laws, it deals only with the responsibilities of employers for death or injury to their employees, and provides stand-

ardized amounts of compensation regardless of fault on the part of the employer.

The only one of these statutes that applies not just to a class of workers but to any "person," and that bases liability on conduct violative of general maritime law, is the Death on the High Seas Act. The borrowing of its schedule of beneficiaries, argues the United States, will not only effectuate the expressed congressional preferences in this area but will also promote uniformity by ensuring that the beneficiaries will be the same for identical torts, rather than varying with the employment status of the decedent. There is no occasion, according to this argument, to borrow from the law of the relevant coastal State, since underlying duties to be effectuated are entirely federal and Congress has expressed its preference of beneficiaries for violations of maritime law.

(Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1791)

While the Supreme Court did not have occasion to finally determine the beneficiaries who were entitled to recover from the wrongful death action in *Moragne*, the logic of the arguments presented by the United States, their lengthy discussion by the Supreme Court and the fact that it is the standard already being applied in other state court maritime actions (See Guilbeau v. Calzada, 240 So.2d 104 (La.App., 1970)) are convincing that the beneficiary schedule in the Death on the High Seas Act (D.O.H.S.A.) is to be applied in this case.

The Death on the High Seas Act, 46 U.S.C.A. § 761, provides:

§ 761. *Right of Action; where and by whom brought*

Whenever the death of a person shall be çaused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued. Mar. 30, 1920, c. 111, § 1, 41 Stat. 537.

Borrowing the schedule of beneficiaries from the D.O.H.S.A., the individuals who may recover for the wrongful death of the decedent under general maritime law are Charles H. Smith, Jr. and Wilhelmina M. Smith, the decedent's parents, and such brothers and sisters who may qualify within the meaning of the term "dependent relative" as used in the D.O.H.S.A. See Gilmore & Black, The Law of Admiralty § 6–31, p. 304.

The plaintiff contends that the personal representative of the deceased Charles H. Smith, as Administrator of the Estate of Richard K. Smith) is a beneficiary entitled to recover damages for the decedent's pain and suffering and for the present value of the estate that the decedent was prevented from creating due to premature death, under the general maritime law. Only if the personal representative qualifies as a person for whose benefit suit may be brought under the D.O.H.S.A. may he be classified as a beneficiary in wrongful death actions due to unseaworthiness under general maritime law.

Under the D.O.H.S.A., the personal representative of the deceased and not his beneficiaries has a cause of action. See Civil v. Waterman S. S. Corp., 217 F.2d 94 (C.A.N.Y., 1954). The personal representative who asserts a cause of action, however, is not suing as a representative of the decedent's estate or for its benefit and the amount recovered does not become an asset of the estate: The personal representative sues under the D.O.H.S.A. as a trustee for the benefit of those specifically authorized to recover under the statute, that is "the decedent's wife, husband, parent,

child or dependent relative." See Mandell & Wright v. Thomas, 441 S.W.2d 841 (Tex., 1969) and cases cited therein. The decedent's personal representative, therefore, is not a beneficiary (a person for whose benefit suit may be brought) under the D.O.H.S.A.[2] The plaintiff's contention is not well taken.

Prior to *Moragne*, the assessment of damages in a wrongful death action would have been determined by state law. The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). The replacement of state measures of damages by a federal one, however, was forecast in *Moragne*:

Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts.

(Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1788)

See also United States Steel Corp. v. Lamp, 436 F.2d 1256 (6 Cir., 1970).

In *Moragne*, the Supreme Court declined to fix the proper measure of damages to be awarded under the new right for wrongful death. A Court observation, however, established a guide for lower courts:

If still other subsidiary issues should require resolution, such as particular questions of the measure of damages, the Courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful death acts have been implemented with success for decades. The experience thus built up counsels that a suit for wrongful death raises no problems unlike those that have long been grist for the judicial mill.

(Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1792)

A further analysis of the D.O.H.S.A. and the various state wrongful death laws must be made, therefore, to determine the measure of damages for wrongful death actions under general maritime law.

The Death on the High Seas Act, 46 U.S.C.A. § 762, provides:

*§ 762.   Amount and apportionment of recovery*

The recovery in such suit (for death on the high seas) shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.

Following the Supreme Court guidelines in *Moragne*, pecuniary loss, as the measure of recovery under the D.O.H.S.A., is one measure of damages in a wrongful death action under general maritime law. The question remains, however, whether there are elements of damages in state wrongful death acts which should also be compensable under the new wrongful death action.

In Petition of Canal Barge Company, supra, the District Court determined that "(I)n our view, the remedy recently provided by the Supreme Court in *Moragne* for death caused by the unseaworthiness of a vessel under general maritime law does not adopt, or require the adoption of, any different or greater measure of damages (than the actual pecuniary loss occasioned by the seaman's death as provided in the Jones Act and the D.O.H.S.A.)". Petition of Canal Barge Company, supra, 323 F. Supp. at 821. The court's consideration in

---

2. It appears, however, that a personal representative (administrator or admintratrix), similar to actions under the D.O.H.S.A., may bring suit on behalf of the decedent's beneficiaries. See Utzinger v. United States, 432 F.2d 485 (6 Cir., 1970); and Petitioner of Canal Barge, Company, supra.

*Petition of Canal Barge Company*, however, was limited to whether the measure of damages under general maritime law should be supplemented by the law of a specific state, whether the state where the decedent resided, the state where the maritime tort occurred, the state of incorporation or the forum state. The requirements of a uniform measure of damages for wrongful death actions under general maritime law required the decision that a national rule for computing damages was necessary, avoiding "the diverse and often conflicting provisions of wrongful death statutes of the several states and the interpretations placed thereon by the courts." Petition of Canal Barge Company, supra, 323 F.Supp. at 821. The Supreme Court's comment in *Moragne*, however, that "(b)oth the Death on the High Seas Act and the numerous state wrongful death acts" may be considered in determining the measure of damages under general maritime law indicates that there may be general principles in the many state wrongful death acts which should be incorporated in a national standard for damages.

The plaintiffs contend that "grief" should be an element of damages in a maritime wrongful death action. The Supreme Court in *Moragne*, in establishing a general maritime right of recovery, rather than reject the rationale of previous cases, relied more on developments in the law since 1886 to overrule *The Harrisburg*. The Court noted in *Moragne*:

> We need not, however, pronounce a verdict on whether *The Harrisburg*, when decided, was a correct extrapolation of the principles of decisional law then in existence. A development of major significance has intervened, making clear that the rule against recovery for wrongful death is sharply out of keeping with the policies of modern American maritime law. This development is the wholesale abandonment of the rule in most areas where it once held sway, quite evidently prompted by the same sense of the rule's

injustice that generated so much criticism of its original promulgation.

> (Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1781)

In In re Sincere Navigation Corporation, 329 F.Supp. 652 (E.D.La., 1971), the United States District Court for the Eastern District of Louisiana determined that the emotional distress suffered by beneficiaries is compensable under general maritime law. In reaching its decision, the Court relied upon departures from the rationale of the original English and American court decisions on emotional distress and on changes in state personal injury laws.

Lord Campbell's Act, the original statutory remedy for wrongful death, was strictly construed due to the court's alarm "at the difficulty of evaluating the improbable injuries to sentiments and affection because of death." See Prosser, The Law of Torts, § 121. The debilitating effect of grief and its resultant depression, however, are no less real than pecuniary losses and, in practice, are compensated. Prosser has noted, where juries award substantial verdicts for the death of a minor child when only nominal pecuniary loss can be calculated, that:

> Such decisions do not appear very likely to command respect for the administration of justice; but it seems evident that it is the theory which is wrong, and not the result. (Prosser, The Law of Torts, § 121)

The present nature of statutory law was discussed in In re Sincere Navigation Corporation:

> In many states, non-pecuniary damages are explicitly permitted. All but eight states supplement the damages awarded for the loss of monetary contributions with allowances for the loss of intangibles such as the loss of parental services of care, guidance and control. The three federal statutes also permit this. While a monetary equivalent for such services is more easily determinable than for

sentimental losses, the deprivation of these services is not dissimilar from other psychic injuries caused by the death of a loved one. In addition, twenty-four states presently permit recovery for sentimental loss: the love and affection of the deceased or mental anguish of the beneficiaries.

(In re Sincere Navigation Corporation, supra, 329 F.Supp. at 656)

Maritime law has always been a thing apart, developing general principles unknown to the common law. As observed by the Supreme Court in *Moragne*, "(t)hese principles (of maritime law) included a special solicitude for the welfare of those men who undertook to venture upon hazardous and unpredictable sea voyages. See generally G. Gilmore & C. Black, The Law of Admirality 1–11, 253 (1957); P. Edelman, Maritime Injury and Death 1 (1960)." Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1780. In The Sea Gull, 21 Fed.Cas. p. 909 (No. 12, 578) (C.C. Md., 1865), a decision prior to *The Harrisburg* quoted with approval in *Moragne*, Chief Justice Chase, sitting in circuit, discussed the nature of admiralty proceedings. Confronted with an objection to the Court's jurisdiction in a wrongful death action under maritime law, the Chief Justice maintained:

There are cases, indeed, in which it has been held that in a suit at law, no redress can be had by the surviving representative for injuries occasioned by the death of one through the wrong of another; but these are all common law cases, and the common law has its peculiar rules in relation to this subject, traceable to the feudal system and its forfeitures * * * and certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules. (The Sea Gull, supra, at 910)

See also Moragne v. States Marine Lines, Inc., supra, 90 S.Ct. at 1781 and cases cited

therein. In a case of first impression, when not required to withhold relief by established and inflexible rules, it becomes a court determining the elements of recovery in admiralty to adopt humane measures of damages.

 Developing a new standard of recovery under general maritime law, it is incumbent upon this Court to consider the national developments in the law regarding recovery for emotional distress. These developments, as analyzed in In re Sincere Navigation Corporation, supra, require a decision that emotional distress is compensable under general maritime law.

It is so ordered.