**Esther SANDERS, Plaintiff-Appellant,**

v.

**Robert J. RICHMOND,
Defendant-Respondent.**

No. 39019.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 13, 1979.

**402**

David O. Danis, Whalen, O'Connor, Danis & Tobben, St. Louis, for plaintiff-appellant.

Donald L. James, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Lawrence B. Grebel, Michael R. Noakes, St. Louis, for defendant-respondent.

KELLY, Judge.

This appeal presents the question whether a widow's claim for the death of her husband caused by injuries sustained when two motor boats collided on the Mississippi River is barred by the decedent's contributory negligence. We hold that it is not, reverse the judgment entered in the trial court for the defendant, and remand the cause for a new trial.

Charles L. Sanders, the decedent, was, on July 12, 1975, the owner of a 16 foot long john-boat which was powered by a 20 horsepower motor mounted on the stern of the john-boat. The john-boat was not equipped with running lights as required by law.

Sometime between the hours of 10:00 p. m. and 11:00 p. m. on that date, decedent and his brother-in-law, Edward A. Dillon, got under way from a boat dock on the Missouri bank of the Mississippi River near an area known as Lake Shore for the purpose of checking some trot lines on Two Branch Island. Decedent, who was seated on a swivel-type chair on the thwart just forward of the stern, and who was operating the outboard motor from that position, was wearing a camouflage jacket. He also had a lighted reflector lamp attached to his head. Mr. Dillon was seated on a thwart

somewhat forward of the decedent and facing aft. He was wearing a reddish-orange life jacket.

Two Branch Island is located approximately in the middle of the river at this point and almost directly northward across the river from whence decedent and his brother-in-law took departure. To reach the island it was necessary for decedent to proceed across the main channel of the Mississippi River which at this point runs in an approximately east-west direction.

The weather was clear and the waters calm.

As the john-boat with decedent and Mr. Dillon in it was proceeding northwardly across the Mississippi River heading for Two Branch Island at a speed of approximately 12 to 15 miles per hour, Mr. Dillon, who was looking at decedent's clubhouse astern, which was situated near the dock they had left, heard a thump and was knocked unconscious. At no time prior to feeling the thump did he see any approaching lights or hear the sound of an engine. He was uncertain from what direction the john-boat he was in was collided with by the other vessel. When he regained consciousness Mr. Dillon observed the decedent lying in the stern of the john-boat, apparently unconscious.

According to Mr. Dillon, when decedent left the dock and got underway to go to Two Branch Island, the light he had on his head, which "looked like a miner's light," was turned on and shed some illumination. On cross-examination he admitted that he did not know whether this light on decedent's head was still on when the collision occurred, and that even if it were, it would have been directed where decedent was looking at any given time.

Robert J. Richmond, the respondent, was operating a 19 foot Sidewinder run-about, powered by a 455 jet engine, proceeding upstream at an estimated speed of 18 to 20 miles per hour enroute from a restaurant where he and a lady passenger had dined. The run-about was equipped with the running lights required by law for motor boats of this class. The dashboard lights on the craft were turned off. He was traveling in the main channel of the river, and was looking dead ahead. At the speed he was traveling the boat he was operating planed; and at the time of the collision the boat was planing and this was the basis of his estimate of the speed of his motorboat when the collision occurred. According to the evidence, this boat was owned by Julia Richmond, respondent's mother.

The passenger in the boat being operated by respondent was seated on the port side of said boat, across from the respondent as he steered the boat from the starboard side. She was facing him but she was not turned from side to side, she was more or less looking out across the water.

Immediately prior to the collision, the respondent saw a shadow to his left; but he saw no lights. He never saw the decedent or the john-boat until after the collision. His passenger's first notice of the collision was the bump, which caused her to be "bumped up into the air."

The points of collision, as evidenced by photographs of damage to the two craft were the bow of the runabout at the waterline, and the starboard side of the john-boat just forward of the thwart on which decedent was sitting as he was operating the outboard motor on the john-boat.

The jury returned a verdict for the respondent and the trial court entered judgment accordingly. The appellant's timely motion for new trial was overruled and this appeal followed.

On appeal five points are relied on as grounds for reversing the judgment of the trial court and the remanding of the cause for a new trial. Each is directed to whether the respondent was entitled to submit the contributory negligence of the decedent to the jury as a bar to his widow's claim for wrongful death. As we have said hereinabove, we hold that contributory negligence was not a complete bar to appellant's claim and the trial court erred in submitting the contributory negligence of the decedent to defeat his widow's claim.

The injuries from which the decedent came to his death were incurred as the result of a collision between two motorboats on the Mississippi River. The Mississippi River at the point where the collision occurred, approximately one-half the distance between the Missouri bank of the river and Two Branch Island, and between miles 230 and 229, is a navigable stream and motorboats operated thereon at this location are subject to the rules of navigation applicable to the Mississippi River and its tributaries, the Atchafalaya River and the Red River of the North. 33 U.S.C. § 301 (1970). The Federal Boat Safety Act of 1971, 46 U.S.C. § 1459, with one exception, preempts any state law or regulation which establishes "any boat or associated equipment performance or other safety standard, or which imposes any requirement for associated equipment" except where state boating safety programs are directed at implementing and supplementing the Act. (The exception has no application to the issues in this case.)

Appellant contends that her claim is one brought under the law of admiralty and that her late husband's contributory negligence does not bar recovery because under Federal Maritime Law contributory negligence of her decedent may be considered only in mitigation of damages as justice requires.

Respondent, on the other hand, contends that the appellant did not plead the non-statutory federal maritime wrongful death cause of action established in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) which would have been cognizable in federal court on its admiralty side, but, that she brought her action in a state court under the Missouri Wrongful Death Statute, § 537.080 RSMo.1969, and therefore her husband's contributory negligence is a complete bar to her claim. Sec. 537.085 RSMo.1969. We conclude, and we also believe respondent concluded, that the appellant pled the federal maritime cause of action for wrongful death recognized by the Supreme Court of the United States when it decided *Moragne v. States Marine Lines, Inc.*, supra.

To fully understand the reason for this conclusion it is essential that we review the pleadings in this cause in chronological order as they appear in the transcript on appeal. Appellant filed her petition for damages on the 13th day of August, 1975. In this petition she joined Julia Richmond, as the owner of the runabout, and Robert J. Richmond, as its operator. The petition as it appears in the record is as follows:

"PETITION

Comes now plaintiff and for her petition against defendants, states as follows:

1. Plaintiff and defendants are residents of St. Charles County, Missouri.

2. On and prior to July 12, 1975, Charles L. Sanders was plaintiff's lawful husband, and plaintiff brings this action as the surviving spouse of said Charles L. Sanders, deceased, as provided by Section 537.070 and 537.090, R.S.Mo.1959, (sic) as amended.

3. Defendant Julia Richmond was the owner of a 1973 Sidewinder boat # 29VJ113 and defendant Robert J. Richmond was the operator of said boat on July 12, 1975, at the time of the collision herein referred to.

4. Charles L. Sanders met his death on July 12, 1975, as the direct result of the negligence and carelessness of defendants in the following respects to-wit:

(a) Defendants operated said boat in a careless and wreckless (sic) manner.

(b) Defendants operated said boat at an excessive speed too fast for the conditions as they existed.

(c) Defendants failed to keep a lookout while operating said boat.

(d) Defendants failed to warn of their approach.

(e) Defendants failed to properly light their boat after dark.

All of the aforementioned acts of carelessness and negligence resulted in defendants' boat colliding with the person of Charles L. Sanders and causing wounds to the said Charles L. Sanders from which he expired on July 12, 1975.

5. Said collision occurred on the Mississippi River, a navigable stream in the State of Missouri.

6. The plaintiff was dependant (sic) upon her said husband for her support.

7. As a direct and proximate result of the foregoing negligence and carelessness of defendants, plaintiff has been deprived of the support, aid, society, companionship and consortium of her aforesaid husband and has been caused to incur the necessary burial expense in the approximate sum of Two Thousand and No/100 Dollars ($2,000.00).

WHEREFORE, the premises considered, plaintiff prays judgment against defendants in the sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) and for her costs herein expended.

FILED: August 13, 1975"

On September 4, 1975, the defendants filed a joint Answer admitting that they were residents of St. Charles County, Missouri, denying each and every other allegation of plaintiff's petition and alleging that her claim was barred by the decedent's contributory negligence. Thereafter, on September 10, 1975, plaintiff filed a motion to strike defendant's Answer and as grounds for said motion alleged that the cause of action arose out of injuries that occurred on the Mississippi River, a navigable stream, under the jurisdiction of admiralty law and that under the law of admiralty, contributory negligence is not a defense to a negligence tort action. The record does not show whether this motion was argued, but on April 22, 1976, Julia Richmond filed a Separate Amended Answer wherein she abandoned the defense of contributory negligence raised in her prior Answer, and instead raised an affirmative defense that she was the owner of the vessel mentioned in plaintiff's petition and pursuant to the Admiralty and Maritime Laws of the United States, such ownership limits her liability to the reasonable value of the vessel on the date and time of the occurrence and accordingly, pled exoneration. On the same date the respondent likewise filed a Separate

Amended Answer wherein he too abandoned his previous affirmative defense of contributory negligence and alleged instead the affirmative defense of exoneration and limitation from liability available to the owner of a vessel under the Admiralty Law of the United States. He also alleged that he was the owner of the vessel involved in this accident and that his liability arising out of the incident mentioned in the plaintiff's petition was therefore limited solely to the value of the vessel involved in said accident and could not exceed its value.

On August 13, 1976, the attorneys for the plaintiff served notice upon the defendants' attorney that he would take up his motion to strike portions of defendants' Answer on September 7, 1976.

Thereafter, on August 23, 1976, both Ms. Richmond and respondent filed separate "Second Amended Answers." In each they again raised the admiralty defense of exoneration and further alleged contributory negligence of the deceased as diminishing the award of any damage under the applicable laws of admiralty in the event either defendant should be found to be partially negligent.

Thereafter, on February 1, 1977, when the cause came on for trial, by stipulation of the parties, plaintiff's cause of action as to defendant Julia Richmond was dismissed without prejudice. The cause proceeded to trial with the pleadings framed accordingly. At the conclusion of the evidence, the respondent tendered to the trial court a contributory negligence instruction drafted in the pattern of MAI 32.01, directing the jury to return a verdict for the respondent if it found that the decedent was negligent in that he either failed to keep a careful lookout, or failed to yield the right-of-way, or failed to display required running lights, and that such negligence of the decedent caused or directly contributed to cause any damage the appellant may have sustained, whether or not the respondent was negligent.

During an instruction conference the trial court indicated that it would submit this

contributory negligence instruction to the jury but it was called to its attention that contributory negligence as a complete bar to appellant's claim had not been pled and the trial court concurred in this argument of appellant's counsel. The trial court then, over appellant's objection, granted the respondent leave to amend his Second Amended Answer to incorporate contributory negligence as a bar to appellant's claim and submitted the tendered instruction to the jury as Instruction No. 3.

Prior to the *Moragne* decision, supra, decisional law was to the effect that maritime law provided no recovery for wrongful death within a state's territorial waters. *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886); The *Tungus v. Skovgaard,* 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). However, *Moragne* overruled these prior decisions and held that an action lay under general maritime law for death caused by violation of maritime duties on navigable waters within a state as well as on the high seas. It did not, however, undertake a complete delineation of the legal system it germinated, and left many questions for later resolution by permitting them to sift through the lower courts in future litigation. 398 U.S. l.c. 408, 90 S.Ct. 1772. And although the court in *Moragne* permitted the widow in that case to assert a wrongful death claim for the death of her husband occurring aboard a vessel on navigable waters within the state of Florida, it specifically refused to decide which beneficiaries were entitled to recover for the common law wrongful death. With respect to the measure of damages in the newly recognized wrongful death action the court also made no definitive ruling, preferring instead to refer the courts before whom the question should arise to look to the Death on the High Seas Act and the numerous state wrongful death acts for a resolution of these questions.

The right of a widow to recover for the loss of her husband's society and a rejection of the contention that recovery should be limited to pecuniary items such as the loss of support was not determined until 1974 when the court handed down the decision in *Sea-Land Services v. Gaudet,* 414 U.S. 573, 584[13, 14], 94 S.Ct. 806, 39 L.Ed.2d 9. It was during this period when the courts were engaged in resolving those issues untouched in *Moragne* that appellant filed her petition. For these reasons, together with those previously mentioned with reference to the Answers filed by the respondent wherein he raised defenses peculiar to admiralty law and unknown to the common law of this state, we conclude that the mere presence in plaintiff's petition of an allegation that she brought this action as a surviving spouse of Charles L. Sanders, deceased "as provided by Section 537.070 and 537.090, R.S.Mo.1959 (sic), as amended" does not change her cause of action to a Missouri wrongful death proceeding and expose her to the defense of contributory negligence as a matter of Missouri substantive law. Before the *Moragne* decision, and we believe, as a direct consequence of the denial of a common law wrongful death action for the death of one caused by negligence on the navigable waters within state territorial boundaries, Admiralty Courts found it necessary to borrow a remedy from the states in whose territory such death occurred so as to afford some form of relief to the person or persons entitled to redress by reason of said death which was the direct result of a maritime tort. In those circumstances the cases held that the substantive law of the state wherein the death occurred and whose wrongful death statute was "borrowed" as the basis for recovery, was to be followed. When that tack was taken, a state court was bound to apply contributory negligence as a bar to recovery where that was the substantive law and the wrongful death action was brought in the courts of that state. However, if the plaintiff was fortunate and could bring the same cause of action in a state court where contributory negligence was not a bar but merely mitigated the damages which might be awarded plaintiff, the law of comparative negligence would be applicable. In the first instance, the apportionment of damages rule applied

in federal maritime law would be avoided; in the latter, however, it would be applied.[1]

■ We believe, however, that *Moragne* did make clear that maritime principles of negligence form the basis for recovery in a cause of action brought under the common law wrongful death cause of action it announced, and that a state court is required, therefore, to apply the federal maritime law in a cause for wrongful death suffered on the navigable waters within the territorial waters of the state in whose courts the remedy is pursued. 398 U.S. l.c. 378(1), 90 S.Ct. 1772.

We are also of the opinion that the decisions of the Supreme Court of the United States in *Moragne,* supra, and *Sea-Land Services v. Gaudet,* supra, have displaced state law remedies for wrongful death on navigable waters within the territorial boundaries of a state and have substituted in lieu thereof a maritime cause of action. *Law v. Sea Drilling Corp.,* 523 F.2d 793, 798[3] (5th Cir. 1975). In commenting upon the effect of the *Moragne* decision the court in *Law,* said, l.c. 798:

"No longer does one need a state remedy. No longer does one need a state court, or The Admiralty as a Court, or DOHSA as a remedy. There is a federal maritime cause of action for death on navigable waters—any navigable waters—and it can be enforced in any court."

Since *Moragne* we are of the opinion that those authorities which held that state substantive law with respect to contributory negligence must be followed in a wrongful death action brought in a state court for death on a navigable stream within the territory of that state are no longer to be followed.

One line that runs through *Moragne* is the principle that federal admiralty law should be system of law coextensive with and operating uniformly in the whole country. 398 U.S. l.c. 402[11], 90 S.Ct. 1772. In holding that *Moragne* has made it necessary to apply the federal maritime substantive law wherein contributory negligence is not a total bar to a claim for wrongful death occurring on a navigable stream within the territorial boundaries of a state we will give effect to the constitutionally based principle that federal admiralty law should be a system of law coextensive with and operating uniformly within the whole country. In reaching the conclusion we have, cognizance has been taken of admiralty as both a distinct jurisdiction and as a substantive body of law where commonly referred to as "maritime law."

Admiralty jurisdiction, as the term connotes, is concerned with the power to administer the substantive maritime law. Admiralty jurisdiction is vested exclusively within the courts of the United States by Article III, Sec. 2 of the Constitution of the United States. In enacting Section 9 of the Judiciary Act of 1789, now 28 U.S.C. § 1333, Congress implemented the constitutional grant by saving to suitors in all cases all other remedies to which they were otherwise entitled. This clause of the Act is more commonly known as "The Saving to Suitors Clause," and the meaning of this clause is crucial to the decision in this case because it determines in what court an action in admiralty is to be brought, and whether the action is one in admiralty or is a civil action.

■ The threshold question is whether the tort which is the basis for this cause of action is in fact a maritime tort and as such cognizable in admiralty. Admiralty jurisdiction over maritime torts historically was established on the basis of the locale of the tort; and if the tort occurred upon any navigable stream of the United States claims arising therefrom were within admiralty jurisdiction. *The Plymouth,* 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1865). However, since *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) an additional factor

---

1. See: Annotation, Liability of Owner or Operator of Motorboat for Injury or Damage, 63 A.L.R.2d 343, 372, § 12; Annotation, Action for Death Caused by Maritime Tort within a State's Territorial Waters, 71 A.L.R.2d 1296, 1319, § 15); Comment, Torts on Inland Waters—Admiralty Jurisdiction, 39 Mo.L.R. 23, 50, 1974.

has been added, and the wrong now must bear a significant relationship to traditional maritime activity. However, the operation of pleasure craft upon the navigable waters of the United States has been held to fall appropriately within the historical scope and design of the law of admiralty. *Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); *Coryell v. Phipps,* 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); *Just v. Chambers,* 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903 (1941); *St. Hilaire Moye v. Henderson,* 496 F.2d 973, 979[1] (8th Cir. 1974); *Oppen v. Aetna Ins. Co.,* 485 F.2d 252 (9th Cir. 1973); *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973).

We believe it can no longer be questioned that a suitor with an in personam claim arising out of a maritime tort may elect to sue in a state court or in a federal court on the law side on the authority of the saving to suitors clause of the Judiciary Act of 1789. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Pryor v. American President Lines,* 520 F.2d 974, 977[2] (4th Cir. 1975); *Still v. Dixon,* 337 So.2d 1033, 1035[2] (Fla.App.1976); *Smith v. Allstate Yacht Rentals Ltd.,* 293 A.2d 805, 807[2] (Del.Super.1972); *Shannon v. City of Anchorage,* 478 P.2d 815, 818[3] (Alaska 1970); *Blevens v. Sfetku,* 259 Cal.App.2d 527, 66 Cal.Rptr. 486, 489[5] (1968); 2 Am. Jur.2d Admiralty, § 106, p. 783. Appellant, as was her right, chose to pursue her *Moragne* wrongful death claim in the state courts of Missouri. Substantive maritime law does not recognize contributory negligence as a complete bar to recovery where an in personam claim is brought for personal injuries or property damages sustained as a result of a maritime tort; rather, it employs the division of damages rule. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *The Max Morris v. Curry,* 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586 (1890); *Landry v. Two R Drilling Company,* 511 F.2d 138, 143, fn. 4 (5th Cir. 1975); 2 Am.Jur.2d Admiralty § 187, p. 833. We hold therefore, that because this was a *Moragne* wrongful death action brought in the state court the substantive law with reference to damages is that of admiralty law and the trial court erred in instructing the jury on the common law defense of contributory negligence.

Because we have decided to reverse the judgment and remand the cause for a new trial on the grounds that contributory negligence was improperly submitted as a bar to appellant's claim, we conclude that it is not necessary that we specifically rule on appellant's remaining points because they too are directly affected by the substantive law to be applied with respect to decedent's contributory negligence. These same questions should not arise in the course of the new trial.

Reversed and remanded to the trial court for a new trial in which the substantive maritime law shall apply.

WEIER, C. J., and GUNN, P. J., concur.